3 W　181
208　¹172

## Allen *against* M'Masters.

In ejectment, where the plaintiff claimed under a devise from a father to a son of land which the devisor held in his lifetime under a deed executed to himself and wife, and she, after a lapse of fifteen years from the death of the devisor, claimed the land by right of survivorship under the deed ; the plaintiff will not be permitted to prove that the grantor was ignorant of the insertion of her name in the deed, and had no intention to make her a gift, she being his sister : but the plaintiff may prove that the whole of the consideration was paid by the devisor and his son the devisee, and that the devisor said, both before and at the execution of the deed, that he intended the land for his son.

Evidence cannot be received to show that the wife was at the time, and long afterwards continued, ignorant of the insertion of her name in the deed. It is competent, however, to prove that the husband had no knowledge of the fact.

Her own declarations will be admitted to prove that the insertion of her name was without authority, and was a trick of the scrivener for the secret purpose of rendering her a service.

In doubtful cases it is better to admit proof, and judge of its effects afterwards. An offer, therefore, to prove that the widow accepted and enjoyed a provision under the devisor's will for fifteen years before claiming the land ; that the son, with her knowledge, claimed, occupied and largely improved it ; and that she never claimed it until it was sold by the sheriff, as her son's property, to the plaintiff, should be received, although such evidence might not make out a case of election by the widow.

ERROR to the common pleas of *Alleghany* county.

This was an action of ejectment brought by Michael Allen against William M'Masters and Alexander M'Kee, the defendants in error, to recover a tract of land on Chartier's creek, containing one hundred and thirty-two acres. The plaintiff deduced a regular title from the commonwealth to James Richardson for the tract in dispute. He then gave in evidence a deed from said Richardson to Ephraim Jones and Rachel his wife, dated the 10th of January 1805, and recorded in book M, page 369, in the office of the recorder of said county. Ephraim Jones, by his will dated the 13th of December 1806, devised to his third son, John Jones, the tract in dispute, and charged the same with the payment, within four years after his decease, of 400 dollars with interest, which was the proportion of a fund created by his will, amongst other purposes, for the payment of an annuity of 80 dollars for life to his wife Rachel Jones, who was to choose her residence either with her son Thomas or with her son John ; and, however she might elect, was to be made comfortable in a room furnished and appropriated to her own use. On the death of Ephraim Jones, his son John took possession of the tract and remained on it, his mother living with him, for fourteen or fifteen years, until the land was levied upon under a judgment held against him by S. and J. Thompson, and sold as his property by the sheriff to Michael

[Allen v. M'Masters.]

Allen, to whom a sheriff's deed was acknowledged on the 17th of August 1821. Before the entry of the tenant to whom the sheriff's vendee rented, Mrs Jones took possession, claiming the land in her own right, under the deed from Richardson, in which her name was inserted as a grantee along with her husband. Under her the defendants in error claim. This suit was brought in 1829 after her death.

The following propositions were, at the trial, submitted by the plaintiff's counsel.

1. The plaintiff offered to prove, by James Richardson, the owner of the land previously to the execution of the deed by him to Ephraim Jones and wife, and other testimony, that he did not know that the conveyance was drawn to Ephraim Jones and wife; that he had no intention to make any gift to Mrs Jones, who was his sister; that the purchase money was all paid by Ephraim Jones or his son, the devisee of the tract; that the consideration was the payment of a judgment held by Presly Neville against him; that Ephraim Jones said, previously to, and at the time of the execution of the deed, that he intended the tract for his son John.

2. The plaintiff further offered the grantor, and other testimony, to show that Rachel Jones never knew of her name being inserted in the deed until about the time of the sale to Michael Allen, and that the grantor, and grantee Ephraim Jones, did not know it.

3. The plaintiff further offered to prove, that the insertion of Rachel Jones's name in the deed was without authority, and was done by the scrivener for the secret purpose of rendering a service to Rachel Jones, and was a trick of his, by the declarations of Mrs Jones herself, and corroborated by the other facts as stated in the first and second propositions.

4. The plaintiff further offered to prove that Rachel Jones accepted the devise of 80 dollars per annum, from the death of the testator until after the sale to Michael Allen by the sheriff; that John Jones, with her knowledge, claimed, occupied and largely improved the tract of land devised to him; and that she never claimed the land until after the sale to Michael Allen.

These four distinct propositions were severally rejected by the court below, to which decision the plaintiff's counsel excepted.

Error was assigned to the decision of the court below, rejecting the evidence specified in the above propositions.

*Colwell,* for plaintiff in error.

The insertion of the name of Rachel Jones in the deed from Richardson, for the land in question, was a mistake. The witnesses offered to prove this, were competent, and the matters stated in the offer go most strongly to establish that fact. It was surely such evidence as should have gone to the jury. It is contrary to the principles of sound judicial proceeding to reject such testimony. The leaning of the court, in such cases, should be to the admission

[Allen v. M'Masters.]

of testimony, as, if it should prove insufficient, irrelevant, or improper, the mischief can be much more easily corrected than in cases of hasty rejection. It is often utterly impossible for parties so to state their testimony as to bring their case fairly before a court of error. It is much safer to permit the whole testimony to come out, that the court of the last resort may pronounce, in view of all the details, whether it was proper for the consideration of the jury. The decision of the court below in this case has brought us here with a meagre statement of the main facts we expected to prove, without those corroborating circumstances which go to fill up the features of every transaction. A mistake like that now alleged, is not capable, in most cases, of that direct proof of which many things, not more evident, are susceptible. It is proving a negative. Yet the conclusions arising from the facts we offered to prove, seem irresistible. The grantor, a brother of Rachel Jones, knew nothing of the insertion of her name in the deed. Nothing was said about it. He intended her no benefit, and received no part of the purchase money from her. Her husband who made the purchase, and his son John for whom he declared he was purchasing, paid all the purchase money. He made another provision in his will for his wife; and in the same will carried out his intention, as declared at and before the execution of the deed, by giving this land to his son John. His wife, after his death, acquiesced in this arrangement for some fifteen years until the discovery was made of her right of survivorship, when she immediately seized the prize. These facts so loudly proclaim a mistake, that no jury could hesitate to find the fact. The grantor avers he did not intend any benefit for his sister. The husband intended it for his son, and the wife knew nothing of her rights, as now set up, for fifteen years after the land was given to her son. Surely there can be no mistaking the light in which the acting parties to this transaction viewed it. They never, in the most distant degree, contemplated this survivorship. The facts, that Rachel Jones did not avail herself of it when it accrued, nor for so long a period after, and that she did the first moment it was made known to her, speak more plainly than words—than the strongest evidence of admissions, that she was wholly ignorant of any right or claim to the land in any event. It is not here a naked question how far a grantee may take under a deed of which he was long ignorant, and where the parties claiming against him may not be able to surmount the presumption of his assent to a conveyance for his benefit. The question here is one of mistake or not, and were it not for the facts we offer to prove, going to show the mistake, assent here might be presumed: but the presumption is met and overthrown by the evidence of mistake.

The mistake, we allege, does not destroy this deed, but what a court of equity always permits in such cases only goes to reform it, and confirm what was done under it for twenty years. On the whole subject of mistake, as applicable here, we refer to the follow-

ing cases. Gillespie *v.* Moon, 2 *Johns. Ch.* 585—593; Livingston *v.* Livingston, 2 *Ibid.* 537; De Reimer *v.* Cantilla, 4 *Ibid.* 85; *Ibid.* 167; Washburn *v.* Merril, 1 *Day* 139; Higginbotham *v.* Burnet, 5 *Johns. Ch.* 185; Thompson's Lessee *v.* White, 1 *Dall.* 424; Powell *v.* Mifflin's Administrator, 2 *Dall.* 70; Wallace *v.* Baker, 1 *Binn.* 616; Dinkle *v.* Marshall, 3 *Ibid.* 587; Christ *v.* Diffenbach, 1 *Serg. & Rawle* 466; Cozens *v.* Stevenson, 5 *Ibid.* 421—426; Collam *v.* Hocker, 1 *Rawle* 110; 2 *Swift's Dig.* 92—100; 1 *Madd. Ch.* 48; 8 *Comyn's Dig.* 75; Beltzhoover *v.* Darragh et al., 16 *Serg. & Rawle* 346; Com. Bank *v.* Clapier, 3 *Rawle* 340—346; Oliver for use *v.* Oliver, 4 *Ibid.* 145.

The court below undeniably erred in rejecting the evidence offered to show the election of Rachel Jones to take the provision made for her in her husband's will. She could not take by and against the will. The land she now claims was not only the sole provision for her son John, but was taken by him with a heavy incumbrance for the benefit of the other heirs. Would she be permitted to wait until this incumbrance would be discharged, and then come forward and sweep off the whole? No semblance of a reason can be given, no shadow of an authority can be shown, why we were refused permission to prove the acquiescence of the widow in the family arrangement of the husband, and her election to take that portion of her estate, offered to her, in full. The question of election or not, in such cases, is always open. Every case is one of election where the party cannot take both benefits. By this strange rejection of the evidence of election, we were not only debarred from fixing the defendants to the consequences of an election by the widow, but prevented from presenting other views of the case, which might be equally important. It is settled, for instance, that a party for whom a provision has been made in a will, and whose separate property has, by the same will, been given to another person, shall not set up their claim and their own estate, which has thus been given away, without making compensation to the disappointed party to the amount of the gift made by the will to the person who resumes his own. Here we are prevented from availing ourselves of this principle of equity, as we are not allowed to show the amount received by the widow under the will. We contend that she was bound to surrender to us every farthing she had received under the will before she could enter upon the land, and that we should be permitted to hold the land until compensation is fully made. 12 *Serg. & Rawle* 404; 7 *Ibid.* 63; 9 *Ibid.* 431; 7 *Bac. Ab.* 444; 2 *Rop. Leg.* 378, 379; 2 *Madd. Ch.* 48; 8 *Comyn's Dig.* 536—543; 2 *Yeates* 398; 16 *Serg. & Rawle* 346; 3 *Rawle* 340; 4 *Rawle* 145; 1 *Swanston* 381, note; *Matthews on Presump. Ev.* 426; 4 *Dessaus. Eq. Rep.* 146, 295; 2 *Hen. & Munf.* 387; 2 *Dick.* 463; 3 *Dessaus. Eq. Rep.* 386; *Ambler* 431, 466, 682, 720, 657; 3 *Atk.* 616; *Edw. Ch.* 210; 3 *Yeates* 164; 20 *Johns.* 30; 2 *Rop. Leg.* 445; 17 *Serg. & Rawle* 24; 1 *Swanston* 423, 433, 442; 4 *Dessaus. Eq. Rep.* 301.

[Allen v. M'Masters.]

*Fetterman,* for defendant in error.

The widow acted under the impression, up till the sheriff's sale, that her name was not in the deed.   It would have been better for her to have claimed her dower, instead of accepting the provision made for her by the will.   In that case, instead of the 80 dollars per annum, her income would have been 300 dollars in 1805, and from that time forward would have been constantly increasing.

Our first objection to the propositions is, that they are too vague and indefinite.   A general offer to show misrepresentation and fraud is not admissible.   Commonwealth *v.* Brenneman, 1 *Rawle* 316. This doctrine of mistake to contradict a deed, and the most important clause in the deed, would go to change the whole course of conveyance and descent.   Christine et al. *v.* Whitehill, 16 *Serg. & Rawle* 108 ; Hain et al. *v.* Bell's Administrator, 14 *Serg. & Rawle* 160 ; 3 *Dessaus. Ch. R.* 149 ; 1 *Ibid.* 333 ; Heagy *v.* Umberger, 10 *Serg. & Rawle* 339 ; 2 *H. Bl.* 664 ; Iddings *v.* Iddings, 7 *Serg. & Rawle* 111 ; 8 *Mass.* 146 ; *Talb. Ca. in Eq.* 240 ; 2 *Atk.* 372—383 ; 4 *Dessaus. Ch. R.* 60, 215, 447 ; 3 *Stark. Ev.* 1020 ; Collam *v.* Hocker, 1 *Rawle* 108 ; Shepherd *v.* Watson, 1 *Watts* 35 ; 1 *Swanston* 382.

On the subject of election.   Cauffman *v.* Cauffman, 17 *Serg. & Rawle* 25 ; Duncan *v.* Duncan et al., 2 *Yeates* 302 ; 3 *P. Wms* 320 ; Webb *v.* Evans, 1 *Binn.* 572 ; Wilson *v.* Wilson, 9 *Serg. & Rawle* 425—430 ; 2 *Wheat.* 32 ; 2 *Johns. Ch.* 60, 602 ; 4 *Dessaus. Ch. R.* 301.

*Forward,* on the same side.

The plaintiff below, in the propositions submitted, presented his whole case to the court.   It is not a case where one or two facts offered, were to be followed by others forming a chain of evidence. Allen was an adventurer at sheriff's sale with full notice of title ; for the record of the deed was staring him in the face.   He is now seeking to divest a legal title ; to annul a vested right.   It is not alleged that he was misled by any misrepresentations.   He stands asking for assistance and relief against his own negligence.   He avers a mistake in the deed.   Richardson, the grantor, did not know of the insertion of Mrs Jones's name.   This was of no consequence to Richardson.   He sold for an equivalent, and was to execute the deed to whomever the purchaser directed.   Ephraim Jones was the person concerned.   Suppose a mistake.   Ephraim Jones accepted the deed and put it on record.   Did he not thus ratify his own title, with a knowledge of which he was charged ?   If they had proved that he could not read and was ignorant, there would have been some colour for their pretensions.   But the purchaser at sheriff's sale alleges a mistake of which the parties to the deed never complained, and thirty years after its execution attempts to set it aside on the shallow pretence of a trick in the scrivener.   But suppose she was not aware that she was a grantee.   If she accepted the estate it conveyed, her

III.—Y

[Allen v. M'Masters,]

title vested from the date of the deed. Her husband could not be
her trustee.

It was offered to be proved by the declarations of Mrs Jones, that
the insertion of her name was a trick of the scrivener. Suppose it
the fact. Still we have the other facts that Ephraim Jones accept-
ted, recorded, ratified, and never disaffirmed the deed. The legal
presumptions arising from these facts cannot be gainsaid. And be-
sides, her alleged declarations were made after she had asserted her
right to the land. The best testimony on this point would have
been that of the scrivener himself. But it was alleged he was de-
ceased. Then why was not the evidence of the subscribing wit-
nesses produced, who are still living? Specified and definite proof
of mistake is admissible. At the trial, the plaintiff below was called
upon to specify where the fraud, and where the mistake existed.
But he was making an experiment. Instead of complying with the
call, he submitted his broad propositions, which specified nothing,
and were inadmissible on the ground of their vagueness. Hain et
al. *v.* Bell's Administrator, 14 *Serg. & Rawle* 159—161.

Then as to the question of compensation and election. The elec-
tion must be first established, before the question can arise, whether
the party electing is bound to make compensation. Here no election
was made, or could be made. Wilson *v.* Wilson, 9 *Serg. & Rawle*
430. All the cases read on the other side are cases of absolute elec-
tion and estoppel. 1 *Edw. Ch.* 209. In that case the will devolved
upon the devisees the direct responsibility of making an election.
They were acquainted with their circumstances and with their rights.
It was therefore the case of an express election with knowledge.
But here is the case of a *feme covert,* the wife of the devisor. She
was put upon her election at a time when a devise in a will was not a
bar to dower. There was no compulsion. There is no act of assem-
bly in Pennsylvania that would bar her claim to this land now, un-
less she made an election. The annuity of 80 dollars was not the
value of her dower. There was no offer to prove that it was. The
estate of the devisor was very valuable, and her dower would have
been proportionably large. On this ground of inadequacy alone, the
idea of an election is negatived. But there must be positive proof of
an election, in which the plaintiff entirely failed. On the contrary
he alleged, that the widow knew nothing about the insertion of her
name as a grantee. How then could she be concluded by a sup-
posed election? Is not this an admission that she never made an
election with knowledge? *Clancy* 249, 250; 2 *Rop. Leg.* 390. How
is she to be affected with this want of knowledge? Her mere silence
cannot injure her rights. Nothing short of a disclaimer, or deception
practised upon a purchaser, can postpone the title of a party which
is placed upon record, and is there notice to all the world. She did
not induce Allen to buy. He was not deceived by her misrepresen-
tations.

*Biddle*, in reply, considered three points.

1. The admissibility of the parol evidence, reviewing the authorities.

2. The doctrine of election. 1 *Swanston* 425 ; 1 *Russell & Mylne* 250 ; 17 *Serg. & Rawle* 26 ; 1 *Rawle* 171 ; 3 *Rawle* 393—396 ; 2 *Penns. Rep.* 310—322 ; *Laussat's Fonbl. Eq.* 573 ; 1 *Edw. Ch. Rep.* 209 ; *Devereux Eq. R.* 287 ; 13 *Price* 782 ; 1 *Bligb. N. S.* 401.

3. Supposing the doctrine of election applicable here, what is the mode in which its requisitions are to be enforced? If the widow acted with full knowledge of her rights, she is of course for ever barred ; but even if ignorant, and therefore not concluded by long enjoyment under the will, yet she cannot now claim the land without previously doing what equity enjoins in favour of the disappointed devisee or his representatives. This is a condition precedent to any assertion of title. Such is the conclusion reached in *Cauffman v. Cauffman*, 17 *Serg. & Rawle* 16. Equity will restrain an assertion of the legal title until compensation be made. Lessee of Rolb *v.* Romp, 3 *Yeates* 164.

PER CURIAM.—The fraud, if any, was practised on the grantee, who purchased for himself and the heirs of his blood, and not on the grantor, to whom it was indifferent who got the estate, provided he got the price of it. It was indifferent therefore what he knew or thought in regard to the insertion of the name of the grantee's wife ; and the evidence, thus offered in the first proposition, was so far properly rejected. But proof of the quarter whence the consideration moved, might be proper in connexion with circumstances, and might undoubtedly be made by evidence, competent in other respects, of declarations in the presence of his wife without contradiction from her.

Part of the evidence proposed by the second offer was properly rejected : because the ignorance of a grantee will not impede the operation of a conveyance, his assent being presumed ; and because it does not follow in the present instance that there may not have been a gift to Mrs Jones without her being informed of it. But the fact that E. Jones, the other grantee who paid the purchase money, did not know that her name was inserted, would be a competent fact if proved by evidence unexceptionable in other respects.

The evidence proposed in the third offer ought to have been received, as the declarations of Mrs Jones against her own interest were undoubtedly admissible.

Without saying that the evidence contained in the fourth proposition would have made out a case of election, we think it ought to have gone to the jury. It is impossible to determine the effect of evidence without having it spread before those who are to judge of it ; and this the offering party is frequently unable to do in the first instance, by reason of the unwillingness of witnesses to disclose what they will testify : and it is dangerous to decide a cause on abstract propo-

sitions, rather than on facts proved and evidence laid before the jury, whose form and pressure may be perceived and accurately determined.   In doubtful cases it is certainly the preferable course to admit the proof, and to judge of its effect afterwards; and this course ought to have been pursued here.

Judgment reversed, and a *venire de novo* awarded.