426 A.2d 1134

**ESTATE Of George A. LOIK, Deceased.**

**Appeal of Amanda ALEKSANDROVNA.**

Supreme Court of Pennsylvania.

Argued Jan. 27, 1981.

Decided March 13, 1981.

Dennis James Lawler, Philadelphia, for appellant.

H. Ober Hess, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

OPINION

LARSEN, Justice.

The decedent, George A. Loik, was born in 1903 in Vao, Estonia. He emigrated to the United States and, on April 19, 1974, married one Elizabeth Griesbach, the appellee herein. On September 25, 1977, the decedent died a resident of Montgomery County, Pennsylvania, leaving a will bequeathing his probate estate of approximately $4,000.00 to appellee, and a parcel of residential realty located in Abington Township, which was held by decedent and appellee as tenants by the entireties.

On July 21, 1978, appellant herein, Amanda Aleksandrovna Loik, a resident of the Estonian Soviet Socialist Republic, filed an election to take against the decedent's will, alleging that she was decedent's surviving spouse. Appellee filed a petition to vacate the election, and a hearing on the petition to vacate was held on November 5, 1978.

Appellant did not attend the hearing, but rather, appeared through counsel who offered into evidence a power of attorney executed by appellant in favor of a New York law firm; a document that purports to be a Soviet certificate of marriage; and an *ex-parte* affidavit executed by appellant in the USSR. The court admitted the power of attorney into evidence, and made the "certificate of marriage" a part of the record of the hearing, but reserved ruling on its admissibility after objections were lodged by appellee to its admission. The court sustained an objection to the admission of the *ex-parte* affidavit on the grounds that it is hearsay. Appellant then rested, and appellee introduced her 1974 certificate of marriage to the decedent into evidence and rested. On February 1, 1979, the court filed an opinion and order holding that the Soviet "certificate of marriage" on which the court had reserved ruling was inadmissible, and vacated appellant's election to take against the will. Appellant then brought this direct appeal.

■ The following is an English translation of the afore-mentioned certificate of marriage:

## UNION OF THE SOVIET SOCIAL REPUBLICS
## CERTIFICATE OF MARRIAGE

DIZ I–ER No.000058

Citizen LOIK/LOYK Georg-Anselm
(Surname, first name,
patronymic)
born November 14, 1903
Place of birth Estonian SSR, VAO
(Republic, Territory,
Province, City)
and Citizeness HEIN/KHEIN Amanda
(Surname, first name,
patronymic)
born September 8, 1906
Place of birth Estonian SSR, Tallinn
(Republic, Territory,
Province, City)
entered into matrimony, which was registered in accord-ance with the Law on: the tenth of August, in the year of one thousand nine hundred forty (August 10, 1940)
(Month, day, year—in figures and words)
After conclusion of the marriage, the following surnames were conferred upon
the husband Loik
the wife LOIK
Place of Registration Evangelical Lutheran Pauluse Par-ish of the City of Tallinn
(Designation and location of the agency of Acts of Records of Vital Statistics)
Date issued: April 15, 1978

Seal of the
Republican Bureau of
Archives of Vital
Statistics, Estonian
SSR

Registrar of Records
of Vital Statistics:
illegible signature

I, Heidi Meinhardovna JAKOBSON, Registrar of Records of Vital Statistics of the Republican Bureau of Archives of Vital Statistics, Estonian SSR,

do hereby certify that the annexed:

Certificate of Marriage of LOIK Georg-Anselm and HEIN Amanda, Series DIZ I–ER, No. 000058: are correct copies of the original authentic certificates issued on the basis of the initial official registration in the pertinent books of acts, and by virtue of the laws of the USSR, are considered to be indisputable proof of the occurrence of said acts of vital statistics.

I am the person entrusted with the safekeeping of said books of acts of vital statistics, and I am authorized by law to issue the foregoing documents.

Seal of the
Republican Bureau of
Archives of Statistics,
Estonian SSR

April 6, 1978                    Registrar of Records
                                of Vital Statistics,
                                Estonian SSR:
(illegible signature)           (H. JAKOBSON)

Pursuant to section 5328(b) of the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 5328(b),[1] this document is admissible if it is a copy of the official Soviet marriage records or marriage certificate. But, if it is merely a summary of the matters contained in the official records, it is admissible only upon a showing of good cause and reasonable opportunity to all parties to investigate its authenticity and accuracy.[2] The court below held that the document is merely a summary of the matters contained in the official Soviet marriage certificate, and denied admissibility because the additional requirements imposed upon a

1. That section provides in pertinent part:
    A foreign official record, or an entry therein, when admissible for any purpose, may be evidenced by an official publication or copy thereof... If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of the documents, the tribunal may, for good cause shown...permit the foreign official record to be evidenced by an attested summary...

2. The other requirements of section 5328(b) have been met, and are not at issue in this case.

party offering such a summary had not been fulfilled.  Appellant contends that this holding is in error, and we agree.

The trial court apparently based its conclusion on the statement in the document that the marriage was registered in the Evangelical-Lutheran Pauluse Parish, and the fact that the document itself was issued from a different location by a government, rather than a church, official.  While the trial court's observations are correct, they overlook the fact that the Evangelical-Lutheran Pauluse Parish is described as an agency of Acts of Records of Vital Statistics, which is the Soviet bureau that issued the certificate.  The trial court also completely ignored the designation of the document as a certificate of marriage, the certification that it is indisputable proof of the occurrence of the marriage under Soviet law and, most importantly, the certification that it is a correct copy of the original authentic certificates.  When all of these factors are considered, and the document is fairly read as a whole, it must necessarily be construed to be a copy of the official Soviet marriage certificate.  As such, it should have been received into evidence, and the court below erred in excluding the document as merely a summary of the official Soviet records.

Since the lower court reserved ruling on this crucial piece of evidence *until after the record had been closed,* a practice which we discourage, both parties were placed in the untenable position of not knowing who had the burden of proof, and thus what additional evidence was needed to complete their case.  Consequently, we do not reverse, but vacate the decree and remand the case for a determination of the effect of the admission of the Soviet certificate of marriage, see *Watt's Estate,* 409 Pa. 44, 185 A.2d 781 (1962), and *D'Ippolito's Estate,* 420 Pa. 541, 218 A.2d 224 (1966), and the reception of such additional evidence as the burden of proof and the interests of justice may require.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

When the trial judge was presented with the Soviet marriage certificate at issue here, he believed it to be a summary, rather than a copy, of an official record of the

Soviet Union. Consequently, he deferred ruling upon its admissibility until the end of trial, so that the proponent could have an opportunity to show good cause for its admission and all parties could have reasonable opportunity to investigate its authenticity and accuracy. 42 Pa.C.S.A. § 5328(b).

Today the majority holds that the trial judge's belief was erroneous and that the document was admissible, without further proof, as an official record. With this holding I agree. However, I cannot agree with the majority's characterization of the deferral of rulings on evidence of questionable admissibility as "a practice which we discourage." 426 A.2d at 1137.

Both the Federal Rules of Evidence and the Uniform Rules of Evidence specifically permit the judge in a bench trial to defer ruling on the admissibility of evidence of questionable relevancy. Fed.R.Evid. 104; Unif.R.Evid. 104.

"[E]xperience has demonstrated that in a trial or hearing where no jury is present, more time is ordinarily lost in listening to arguments as to the admissibility of evidence and in considering offers of proof than would be consumed in taking the evidence proffered, and that, even if the trier of facts, by making close rulings upon the admissibility of evidence, does save himself some time, that saving will be more than offset by the time consumed by the reviewing court in considering the propriety of his rulings and by the consequent delay in the final determination of the controversy."

*Donnelly Garment Co. v. NLRB*, 123 F.2d 215, 224 (8th Cir. 1941). See McCormick on Evidence, Ch. 6, § 60 (McCleary ed. 1972); 89 C.J.S. § 589; see generally 1 Wigmore on Evidence ¶ 14 (3rd ed. 1940).

"[T]he practice of contingently admitting evidence in a bench trial is a longstanding one encouraged by many courts and commentators to prevent new trials following reversals attributable to overly scrupulous application of evidentiary rules. *E. g., Builders Steel Co. v. IRS*, 179 F.2d 377, 379 (8th Cir. 1950); Devitt, *The Judge's Profession, Seminars for*

*Newly Appointed United States District Judges* 8 (Comm. on Pretrial Procedure, Judicial Conference of the United States 1963)." *United States ex rel. Placek v. State of Illinois*, 546 F.2d 1298 (7th Cir. 1976).

Although this Court has had little occasion to comment on the practice of deferring evidentiary rulings in bench trials, we have certainly never discouraged it. In *Honan v. Donaldson*, 331 Pa. 388, 391, 200 A. 30, 32 (1938), appellant objected that the trial court had no power to receive certain testimony " 'by reserving the right to strike out such testimony at the conclusion of the case.' " In response, this Court said: "[I]t is a common practice; much must be left to the discretion of the trial judge; here there was no abuse." See *Allen v. McMasters*, 3 Watts 181 (1834). Here, too, had the trial judge been correct in his view that the evidence was a summary and not a copy of an official record, his deferral of a ruling on the admissibility of the document would have been entirely proper.

Thus, although I agree with the holding of the majority, I cannot join the majority in "discouraging," albeit in *dictum*, a practice which promotes, rather than impedes, economy and efficiency in the administration of justice. The exercise of this salutary and well-established practice should be left, as it always has been, to the sound discretion of the trial judge.