Nachman *v.* Nachman, Appellant.

Argued January 8, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Stanley M. Greenberg,* with him *Leonard M. Sagot,* and *Greenberg, Poserina and Sagot,* for appellant.

*Goncer M. Krestal,* with him *Marvin Comisky,* and *Blank, Rudenko, Klaus & Rome,* for appellee.

OPINION BY MR. JUSTICE JONES, March 23, 1965:

This appeal presents a controversy between a husband and wife concerning the ownership of certain personalty once held by them as tenants by the entirety.

After 28 years of marriage, Morris and Pearl Nachman separated in October 1962. Several months thereafter, Morris Nachman (Nachman), instituted an equity action in the Court of Common Pleas No. 6 of Philadelphia County against his wife, Pearl Nachman, and the Liberty Federal Loan Association (Association). Nachman's complaint averred: (1) the existence of a savings account (No. 7607) with the Association titled in the names "Pearl Nachman or Morris Nachman" the balance in which was $763.83; (2) the existence of a savings account (No. 12501) with the Association titled "Pearl Nachman, in trust for Morris Nachman" the balance in which was $2107.72; (3) the existence of a safe deposit box in the Fidelity-Philadelphia Trust Company leased by both Nachman and his wife in which, on or about September 15, 1962, there was cash approximating $5000 and eight specifically identified life insurance policies wherein Nachman was named insured and his wife beneficiary; (4) that, after the separation of the parties, without Nachman's consent, Pearl Nachman removed from the safe deposit box both the cash and insurance policies; (5) that, unless restrained, Pearl Nachman would likely withdraw the money from both savings accounts and appropriate it to her own use.[1]

In her answer, which contained both new matter and a counterclaim, Pearl Nachman claimed ownership of: (1) savings accounts Nos. 7607 and 12501; (2)

---

[1] The court below, upon filing of the complaint, enjoined the withdrawal of the money from the savings account and directed delivery of the insurance policies to Nachman.

savings account No. 12502 with the Association titled "Morris Nachman in trust for Pearl Nachman" in which the balance was approximately $10,000; (3) the proceeds realized from the sale of certain specified securities which had been registered in the joint names of the parties as tenants by the entirety and which had been appropriated by Nachman. In his answer and reply, Nachman stated that he owned both savings account No. 12502 and the proceeds realized from the sale of the securities.

When the matter came on for trial, the parties agreed that savings accounts Nos. 7607 and 12501 would remain undisturbed by the parties until their ownership was adjudicated by the court,[2] that the insurance policies should be delivered to Nachman and that the cash which has been in the safe deposit box should be divided between the parties. In the light of that agreement, the only matters in issue in the court below which are *now* questioned upon this appeal are the ownership of (a) savings account No. 12502 and (b) the proceeds realized from the sale of the securities. After hearing in the court below, that court held that Nachman owned both. From that decree this appeal is taken.

### Proceeds Realized From Sale of Securities

In 1959, with his own funds, Nachman purchased certain securities. At his direction, these securities were issued in the joint names of Morris Nachman and Pearl Nachman, husband and wife. Thenceforth until the summer of 1962, Nachman "played the market", sold and bought securities usually on a short term basis. *On every occasion* when Nachman purchased se-

---

[2] In its adjudication, the court below held that savings account No. 12501 was a revocable trust terminable at will by Pearl Nachman and that savings account No. 7607 was held as a tenancy by the entirety. These portions of the adjudication have not been challenged.

curities, they were placed in the names of Nachman and his wife. *On every occasion* when Nachman sold securities, Pearl Nachman, at the solicitation of Nachman, would execute a power of attorney to effectuate a sale of her interest in such securities. Such was the unvarying course of conduct until the early fall of 1962. At that time—which was shortly before the separation of the parties—Nachman secured Pearl Nachman's signature to a power of attorney, sold all the then existent securities held in the joint names[3] and appropriated the proceeds realized from the sale of such securities to his own use.

The court below, ruling that Nachman was the sole owner of the proceeds realized from the sale of the securities, bottomed his ruling on three grounds: (a) that the moneys with which the securities were purchased came from Nachman's own funds; (b) that the execution of the power of attorney by Pearl Nachman constituted an agreement and acquiescence on her part to the termination and dissolution of the tenancy by the entirety in the securities, if any such estate therein existed; (c) that the evidence rebutted any presumption that a tenancy by the entirety existed in the securities. In so ruling, the court below erred.

It is beyond question that, at the time of the purchase of the original securities as well as at the times of the subsequent purchases of securities, the registration and placement of such securities in the names of "Morris Nachman and Pearl Nachman" or "Morris Nachman or Pearl Nachman", they being husband and wife, created a tenancy by the entirety in such securities: *Berhalter v. Berhalter,* 315 Pa. 225, 227, 173 A. 172; *Holmes Estate,* 414 Pa. 403, 406, 200 A. 2d 745. No agreement to that effect between the parties was necessary (*Geist v. Robinson,* 332 Pa. 44, 47, 1 A. 2d

---

[3] These securities were then valued at approximately $25,000.

153) nor is it material or of any moment in determining the existence of a tenancy by the entirety that the funds utilized for the purchase of the securities were exclusively those of Nachman: *Geist v. Robinson*, supra; *Gallagher Estate*, 352 Pa. 476, 478, 43 A. 2d 132; *Hunt v. Mestrezat*, 361 Pa. 415, 418, 65 A. 2d 389; *DeBernard v. DeBernard*, 384 Pa. 194, 196, 120 A. 2d 176; *Cribbs Estate*, 411 Pa. 242, 250, 191 A. 2d 379. The emphasis placed by the court below upon the source of the funds wherewith the securities were purchased was erroneous.

Once a tenancy by the entirety has been created, then neither spouse can appropriate to his own use the property held in such tenancy and the only appropriation which can be justified is an appropriation made in good faith for the mutual benefit of both parties to the tenancy: *Berhalter v. Berhalter*, supra; *Interboro Bank and Trust Company Appeal*, 359 Pa. 315, 318, 59 A. 2d 101; *Runco v. Ostroski*, 361 Pa. 593, 595, 65 A. 2d 399. In the case at bar, Nachman cannot possibly justify his appropriation of the proceeds of the sale of these securities on the ground that such appropriation was for the mutual benefit of himself and his wife.

Nachman and the court below acted upon the theory that, by the execution of the power of attorney, Pearl Nachman consented to a termination of the tenancy by the entirety, if any such tenancy in the securities ever existed, and that the execution of such power of attorney, coupled with Nachman's explanation why he placed the securities in the joint names[4] and the failure of Pearl Nachman to assert any interest in the securities or the proceeds thereof until Nachman instituted suit, was sufficient evidence to rebut "any pre-

---

[4] Nachman's explanation was that he did so upon his broker's advice, that it would facilitate "trading stock right along" and because he "had a slight little heart condition."

sumption arising from the titling of said [securities] in the joint names of the parties."[5] Such theory finds support neither in the law nor the factual setting of the case at bar.

For over three years, in the purchase and sale of securities, an unvarying pattern and course of conduct had been established by Nachman. On each occasion he purchased securities he placed them in joint names and on each occasion when he sold securities the proceeds from such sale were utilized for the purchase of new securities jointly held. The execution by Pearl Nachman over the years of powers of attorney to effectuate and facilitate the sale of her interest in the securities was *always* followed by the purchase of new securities titled in such manner as to give her an interest as a tenant by the entirety. Pearl Nachman, when presented in the early fall of 1962 with a power of attorney to execute, had every reason to rely upon the established course of conduct. To attribute to the execution by her of this power of attorney an acquiescence on her part to a termination of her rights as a tenant by the entirety is wholly unrealistic and unsound. Under the factual setting herein presented, Pearl Nachman never consented to a dissolution of her rights as a tenant by the entirety in these securities. The conduct of Nachman in appropriating the proceeds of the sale of these securities to his own use was improper and fraudulent in nature: *Stemniski v. Stemniski,* 403 Pa. 38, 41, 42, 169 A. 2d 51.[6]

If we were to adopt the view of the court below that the execution of the power of attorney by Pearl Nachman, the explanation of Nachman why the securities were placed in joint names and the failure of Pearl Nachman to assert her interest in the proceeds of the

---

[5] From the adjudication of the court below.

[6] Cf. *Berhalter v. Berhalter,* supra, pp. 228, 229 and *Reifschneider v. Reifschneider,* 413 Pa. 342, 344, 196 A. 2d 324.

securities until Nachman sued, taken together, *rebutted* the existence of a tenancy by entirety, a tenancy by the entirety would rest upon a very thin reed. "[Tenancies or estates by entireties] have existed for centuries. In this State they were first discussed elaborately in Johnson v. Hart, 6 W. & S. 319, and Fairchild v. Chastelleux, 1 Pa. 176. They undoubtedly became, with the bulk of the common law, part of the law of Pennsylvania": *Madden v. Gosztonyi S. & T. Co.,* 331 Pa. 476, 480, 200 A. 624. At this late date we will not permit the so-called "presumption" that "a tenancy by entireties arises whenever an estate vests in two persons, they being when it so vests, husband and wife"[7] to be rebutted by evidence so unclear, indirect and unconvincing as the evidence herein presented. The evidence upon which the court below relied as rebutting the existence of a tenancy by the entirety in these securities did not even begin to approach the standard of proof required in this class of case.

In arriving at the conclusion that Nachman unlawfully appropriated to his own use the proceeds of the sale of these securities, we accept the findings but reject the conclusions from such findings reached by the chancellor. In the proceeds of the sale of these securities both Nachmans have an interest; in ruling otherwise, the court erred.

BANK ACCOUNT No. 12502

Savings account No. 5640 with the Association was held in the names of "Morris Nachman or Pearl Nachman", a tenancy by the entirety. Pearl Nachman withdrew the money from this account and deposited it in another account (No. 12502) with the Association in the names "Morris Nachman in trust for Pearl Nach-

---

[7] *Bramberry's Estate,* 156 Pa. 628, 27 A. 405.

man". It is claimed that this account represents a tentative or so-called *Totten* trust: *Brose Estate,* 416 Pa. 386, 206 A. 2d 301. Whether this account constitutes a tentative trust will depend upon the *source* of the moneys which went into this account, i.e. whether the moneys came from Nachman, Pearl Nachman or both.

The record discloses that the original deposit in savings account No. 5640 (the tenancy by the entireties account) was $93.48 and that when Nachman withdrew the money from account No. 12502 the balance was $9732.39. However, the record does not show with any particularity the *source* of the moneys which eventually went into savings account No. 12502. Until such source be established it cannot be determined whether account No. 12502 constitutes a tentative trust. The record must therefore be remanded to the court below to determine, if possible, the *source* of the moneys represented by account No. 12502.

Decree reversed and the record remanded to the court below for proceedings consistent with the views expressed in this opinion. Costs to abide the event.