542 A.2d 147

**In re ESTATE OF William T. MATSON, Deceased.**

**Appeal of Julia E. MATSON.**

Superior Court of Pennsylvania.

Submitted Feb. 29, 1988.

Filed April 29, 1988.

Alfred S. Pierce, Nazareth, for appellant.

Frederick, J. Lanshe, Allentown, for appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and WATKINS, JJ.

CIRILLO, President Judge:

This is an appeal from the dismissal of appellant Julia Matson's exceptions to an accounting rendered to the Orphan's Court Division of the Court of Common Pleas of Lehigh County with respect to the estate of her deceased husband, William Matson. We reverse.

█ In reviewing findings of the Orphan's Court, we must accept as true all evidence in the record supporting its

66

findings and all reasonable inferences therefrom. *Adoption of S.H.*, 476 Pa. 608, 383 A.2d 529 (1978). We will uphold its decision so long as it is supported by competent evidence and no abuse of discretion or error of law was committed. *Id.* At issue in the case at bar were two items of personal property: the ownership of a building and the right to a lease for the Forest Camp Site on which it stood.

We state at the outset that the decision in this case did not involve one of construction of a testamentary provision in order to give effect to the intention of the decedent. Rather, as an auditing court, it was presented with the question of the propriety of inclusion of certain assets in the estate. This determination required the trial court to decide questions of law regarding the manner in which the decedent held the property at issue and the legal effectiveness of an alleged inter vivos transfer.

In her exceptions to the accounting, Mrs. Matson sought to have the entire interest in the campsite lease, issued by the Bureau of Forestry of the Department of Environmental Resources (DER) of this Commonwealth pursuant to 71 P.S. § 510–6(4), included as an asset of her husband's estate. It was undisputed among the parties that William Matson's interest in the lease became an asset of his estate at his death. Mrs. Matson quarrels only with the extent of the interest in that asset adjudicated as includable in the estate by the trial court. That court found a completed inter vivos gift of a two-thirds interest in the lease to Matson's brother and nephew.

■ Mrs. Matson also sought to be declared the owner of the cabin located on the leased premises by right of survivorship. As the petitioner, she had the burden of establishing her title to any items of which she claimed ownership. *In re Gumbe's Estate*, 172 Pa.Super. 59, 92 A.2d 265 (1952). The auditing court found the building to be separate from the lease and owned solely by William Matson. As with the lease, it found a completed gift of a two-thirds interest in the cabin. It based its conclusions on the decedent's expressed desire to make the gifts, on what it found to be

compliance with DER's "procedures for effecting transfer of a partial interest in the lease and the cabin", and on Matson's delivery to his brother of "all of the documentation he possessed concerning ownership of the cabin and lease", which it deemed effective constructive delivery.

Mrs. Matson argues on appeal that she was a joint owner of the building, that her husband failed to transfer an interest in the leasehold, either at common law or under the applicable DER regulations, and that the failed leasehold assignment prevented the completion of the gift intended by her husband.

The lease, in essence a ground lease, and the improvement were purchased with $5800.00 from a joint account ($1400.00 for the lease; $4400.00 for the cabin) in 1974 subsequent to a joint remortgaging of the Matsons' principal residence. At that time, DER's Application For Transfer of the lease to William Matson was filed with DER in accordance with its requirements. A DER lease cannot be held except by the owner or owners of a cabin on the leased site, although there is no requirement that all owners be named in the lease, and cannot be sold or transferred separately.[1] That application required a notarized statement by the lease applicant that he "has acquired possession of the cabin and improvements" and a statement by the seller, also notarized, that he "hereby sells, transfers or sets over to [the lease applicant] the cabin and other improvements placed on State Forest land under Forest Camp Lease No. ____." No document was executed to show the change in ownership of the cabin. The transfer of the lease to William Matson was subsequently approved by DER and at the time of his death the lease remained in his name alone.

It is abundantly clear from the record that in 1982 William Matson expressed an intent to transfer a partial interest in the property to his brother and nephew. Four

1. It would perhaps, be more accurate to say that the cabin was purchased and that consideration was paid for the assignment of the lease.

witnesses testified to conversations in which William Matson expressed that intent. In the spring of 1982 William Matson contacted DER to inquire as to the procedure for doing so. There are no specific DER forms to handle the situation presented by Mr. Matson's desire to transfer less than an entire interest. He was told that in the absence of an outright transfer of a 100 per cent interest, which would call for DER's Application For Transfer, a letter from him indicating his desire to add additional names to the lease, thereby entitling a group to enjoyment under its provisions, would suffice. Matson's letter requested that his brother and nephew be added to the lease "with each having equal or ⅓ parts of ownership to the cabin."

DER requires that one person having a financial interest in the cabin occupying the leased site be designated to handle correspondence and other business arising in connection with the lease. Because Matson also wanted to make his brother the agent responsible for the lease, DER's Application For Assignment, subheaded "when no change in ownership is involved", was sent to him. This form states that the requested assignment "has been approved by a majority of the camp members"—presumably in accordance with the group by-laws required by DER guidelines [2] of membership groups holding a lease—and calls for the listing of all persons who had a "financial interest" in the property. Matson's brother and nephew were listed by him as such persons and their signatures attesting this fact were affixed. Following the submission to DER of this application, Matson delivered to his brother all of the paperwork he had concerning the lease and building—his original transfer papers, his original lease and a copy of the Applica-

2. These guidelines never achieved the status of the regulations to which the lease, by its terms, was subject and, therefore, only provide information as to how DER intended its leases to operate. The guidelines require that any group wishing to hold a lease must submit its by-laws before receiving DER approval for the multi-party lease, and, that notification to DER of any change in membership must be accompanied by a formal resolution. The record shows that neither DER nor William Matson abided by the strict dictates of these guidelines in the instant case.

tion For Assignment—and told him to retain them so Matson's intent to give them an interest in the property would be clear.

■ The processing by DER of this application, which under the terms of the lease required its approval, was not completed until after Matson's death and it is undisputed that it was ineffective to assign the lease. It was DER's position that, for its purposes, Matson's letter adding additional names to the lease was sufficient to extend an interest in the building to the brother and nephew; only the assignment was invalid, making the lease, in its opinion, an asset of William Matson's estate. However, DER requires nothing more than the unsupported statement of the designated lessee to reach the first conclusion and relies solely on its failure to approve the assignment for the second. The auditing court correctly noted that the lease did not control the validity of the transfer of the cabin.

We begin our review with the threshold issue of determining in what form of tenancy these assets were held. If they were, as the auditing court found, the sole property of William Matson, we must proceed to examine the record to determine if the auditing court was correct in concluding that a completed gift was made of a two-thirds interest in either or both. We need not reach the claim of gift, however, to the extent either of the assets in question is determined to have been held by the entireties. There is no question that, in Pennsylvania, personalty may be held by the entireties. *Bramberry's Estate*, 156 Pa. 628, 629, 27 A. 405, 408 (1893); *Madden et al. v. Gosztonyi Savings & Trust Co.*, 331 Pa. 476, 484, 200 A. 624, 628 (1938).

Mrs. Matson did not argue below and does not argue here that she had a survivorship interest in the lease. The auditing court dismissed Mrs. Matson's claim of ownership of the cabin by right of survivorship on the basis that any contribution she made to the acquisition was presumed to be a gift. For this proposition it cited two cases: *Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975), which holds that any time a husband or wife contributes towards purchase of

70

entireties property, such contribution is presumed to be a gift to the other, and *Falasco Estate*, 6 Fiduc.Rep.2d 204 (O.C. Chester 1986) which the auditing court read to say that when combined funds are used to purchase an asset titled solely in the name of one spouse, there is a presumed gift by the other spouse to the extent of his or her contribution. The auditing court then went on to find that Mrs. Matson's argument that she did not intend to make such a gift was insufficient to rebut this presumption, thereby establishing William Matson's sole ownership of the assets as of the time of purchase.

We find *Butler* to be inapposite and the holding in *Falasco* misstated. *Butler* dealt with a divorcing wife's request for the imposition of a constructive trust to the extent of her contribution to property held by the entireties and does not support this auditing court's position that a tenancy by the entireties was not created by the Matson's purchase of the assets in question. *Butler* expressly found that the application of different presumptions according to which spouse was named in the title to assets purchased with combined funds (gift from husband if titled in wife's name; loan from or trust in favor of wife if titled in husband's name) was unconstitutional after the passage of the Pennsylvania Equal Rights Amendment, Pa. Const. Art. I, § 28 (adopted May 18, 1971). *Falasco* addresses the situation where an asset acquired partially in exchange for a jointly held asset was titled solely in the name of the wife and holds, perhaps incorrectly in light of *Butler*, that the asset so acquired belongs solely to the wife since there is a presumed gift to the extent of the husband's contribution. While the auditing court's rendition of *Falasco's* holding properly makes no distinction between the spouses, it, like the court in *Falasco*, incorrectly assumes that the presumed gift is to *the other spouse*. The correct application of the presumption results in a gift to *the entireties*. *Butler*, 464 Pa. at 529, 347 A.2d at 481 (in marital relationship, gift to entireties property is presumed for contributions made by either) (emphasis added).

■■■ It is clear from the record that the funds paid as consideration for the transfer of the lease and the purchase of the cabin were paid from the Matsons' joint checking account. These funds represented the proceeds of a mortgage obligation assumed by both Mr. & Mrs. Matson which was secured by their jointly held primary residence. There can be no question that these funds constituted entireties property when they were obtained, when they were deposited into the joint account, and when they were withdrawn on the signature of either authorized depositor of that account. The character of these funds must be presumed to carry over and attach to that which is purchased with them. *Bramberry's Estate*, 156 Pa. at 630, 27 A. at 408 (voluntary conversion of joint estate in land into personalty manifests their intent to resume their respective rights in the proceeds). Both spouses are presumed to have made a gift of their individual interests to the entireties, in whatever form that entireties interest takes.

■■■ In the case at bar, the fact that the lease was held solely in the name of William Matson may have been sufficient to rebut this presumption of entireties ownership. Pennsylvania law presumes that either holder of entireties property may act for both without specific authority so long as the benefit of such action inures to both. *Bradney v. Sakelson*, 325 Pa.Super. 519, 473 A.2d 189 (1984). However, neither spouse may appropriate to his own use property held by the entireties unless his actions are made in good faith and for the mutual benefit of both parties to the tenancy. *Nachman v. Nachman*, 417 Pa. 389, 208 A.2d 247 (1965) (appropriating entireties property to his own use was unlawful); *Clingerman v. Sadowski*, 335 Pa.Super. 514, 485 A.2d 11 (1984) (withdrawals from entireties account for the benefit of only one spouse is misuse of power). Mrs. Matson testified that her husband's actions in placing the lease in his name alone were taken without her knowledge and consent and she might have argued that, in so doing, he impermissibly compromised her interest such that the entireties nature of the lease should be upheld. However, no

such argument was advanced either below or on appeal. We, therefore, endorse the auditing court's finding that Mrs. Matson had no interest in the lease and that William Matson's interest in it was properly an asset of the estate.

 If, as of the time of death, circumstances surrounding piece of property indicate that it belongs to the decedent, the burden of proof is on a claimant to prove otherwise. *In re Clay's Estate*, 438 Pa. 183, 264 A.2d 632 (1970). Mr. Matson's brother and nephew attempted to prove a valid inter vivos gift of a two-thirds interest in both the lease and cabin based on, inter alia, William Matson's completion of DER's Application For Assignment. Appellant argues that the DER lease is a special form of personal property which, like other state-granted privileges, is governed solely by the Commonwealth, in this case through DER, its conclusion as to transfer of lease rights conclusive. We find no support for this proposition or for distinguishing the lease in this case from ordinary ground leases, to which this lease is most similar.

 Any lease is a contract and is, therefore, governed by its provisions. The lease in the instant matter reserved to the discretion of DER any assignment of the lease to a third party. DER's legal counsel opined that William Matson's offer to assign the lease, not having been accepted by DER, was extinguished at his death. The assignment being ineffective, the brother and nephew argue that a common-law gift of a two-thirds interest was made. Under the terms of the lease, any assignment of the lease without DER approval would result in forfeiture of the lease. Since only DER had the power to declare a forfeiture and did not, despite its awareness that William Matson intended to divest himmself of a two-thirds interest and had "added" two persons to the lease, the lease remained in William Matson and a gift at common-law was the only way Matson could possibly have transferred an interest.

 Mrs. Matson argues that her husband's attempt to assign the lease being ineffective, his intent to give a

two-thirds interest away was not completed by delivery. We agree that the attempt by William Matson to divest himself of a partial interest in the lease was of no effect. He could not give away what he had as the benefit of his contract with DER—his status as lessee—without the approval by which he agreed contractually to be bound. At best, his was a conditional gift with his brother's and nephew's right to enjoyment dependent on acceptance by DER of William Matson's proposal. Since this condition was never met, the gift failed, and the entire interest in the campsite lease became an asset of William Matson's estate as of his death.

 With regard to the cabin, however, the record is devoid of any evidence of title. There is no documentation pertaining exclusively to the transfer of or title in this building. In the absence of designated title, it must be presumed that the Matsons held the cabin as tenants by the entirety. The underpinnings of the entireties presumption come from the common-law which teaches that marriage creates a unified holding of property. *Clingerman,* 335 Pa.Super. at 519, 485 A.2d at 14. It is the actual marital status of the parties and not necessarily the words stated or omitted in any instrument that determines their right to take as tenants by the entirety. *Holmes Estate,* 414 Pa. 403, 406, 200 A.2d 745, 752 (1964).

 The presumption of tenancy by the entireties in the cabin having been established, we must examine the record for evidence supporting its rebuttal. There must be clear and convincing evidence to rebut the presumption of entireties. *Id.,* 414 Pa. at 405, 200 A.2d at 747; *Margarite v. Ewald,* 252 Pa.Super. 244, 381 A.2d 480 (1977). William Matson delivered nothing to his brother and/or nephew which had the effect of divesting him of dominion and control over any portion of the *cabin.* Only the notarized statement of the sellers in the Application For Transfer of the lease which reads "[buyer] hereby sells, transfers or sets over to William Matson the cabin and other improvements" arguably supports a finding of rebuttal. However,

DER is not interested in the building outside of confirmation of its existence as a prerequisite to the granting of a lease. It does not view information provided on its forms as conclusive of any ownership interests in the building, leaving that matter to the group or individual holding the lease. Similarly, the addition of names to the lease does not, in its view, necessarily indicate the alteration of ownership of the cabin, only that such additional persons named are, at the designation of the original lessee, entitled to enjoyment of the same privileges extended to the him. Further, compliance or non-compliance with DER forms or guidelines is not legally dispositive of ownership. In finding a transfer of a partial interest in the property, the auditing court erred in relying on DER's acceptance of William Matson's bald statement that his brother and nephew were part owners of the cabin.

For these reasons, we find this statement on the Application For Transfer insufficiently clear and convincing to rebut the presumption of the creation of a tenancy by the entireties in the cabin. We note that, even if the presumption can be said to have been rebutted, because Mrs. Matson testified that she did know about and did not consent to her husband's actions in having the assets put into his name alone, we would find that his attempt to declare himself sole owner was unlawfully done in derogation of his wife's beneficial interest. See *Nachman, supra; Bradney, supra; Clingerman, supra.* While both parties live as husband and wife, termination of an entireties estate occurs only by their joint acts and no single tenant can, by his own act, affect the other's right of survivorship. *Clingerman,* 335 Pa.Super. at 519, 485 A.2d at 14. In a similar situation where a husband caused entireties stock to be retitled to himself and his nephews without his wife's knowledge or consent, our supreme court held that the entireties presumption had not been rebutted by the nephews' claim of a completed gift. *Holmes,* 414 Pa. at 406, 200 A.2d at 747. In *Hengst v. Hengst,* 491 Pa. 120, 420 A.2d 370 (1980), a completed gift to the entireties was found in a husband's

savings plan, even though it was titled in his name, because of the wife's contribution to his ability to set aside that portion of his salary which went into the plan. *Id.*, 491 Pa. at 121, 420 A.2d at 370.

 Mrs. Matson very clearly contributed to the acquisition of the property in question. She did not consent to her husband's attempt to give away a partial interest in the property and we are hard pressed to see that his doing so would in any way benefit his wife. By causing the lease to be issued in his name alone and, later, by attempting to give away a two-thirds interest in both the cabin and leasehold, William Matson improperly appropriated to his own use property in which his wife had a clear beneficial interest. In the absence of a title to the personalty acquired with joint funds, the character of the funds must be presumed to carry over and attach to that which is purchased with them. Because the cabin was purchased with funds held by the entireties and because no document of title or bill of sale in the name of William Matson was executed, the presumption arose that the cabin was held in tenancy by the entirety. The evidence on this record was not sufficient to rebut this presumption. We therefore disagree with the auditing court's holding and find that Mrs. Matson did establish ownership of the cabin by right of survivorship. By so holding we recognize that a purchase of untitled personalty made with proceeds from a loan obtained on the credit of both spouses, especially when jointly held marital property secures that obligation, creates a presumption of entireties ownership.

We, therefore, do not reach the issue found to be dispositive by the auditing court, namely, effective constructive delivery of the attempted inter vivos gifts. Findings of the court at audit are entitled to great weight and should be rejected only in a clear case and only for good and sufficient reason. *Estate of Korn,* 332 Pa.Super. 154, 480 A.2d 1233 (1984). This is such a case. The evidence in the record does not support the findings of the auditing court and its conclusions were errors of law.

For the foregoing reasons the order dismissing Julia Matson's exceptions is reversed and the matter remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.