## Klopp Estate

*Jack G. Mancuso,* for estate.
*Peter W. Schmehl,* for Lola M. Klopp.
*David M. Kozloff,* for Barbara Trostler.

GRIM, *J.,* December 27, 1990 — The case is before the court on an executor's request for a declaratory judgment pursuant to 42 Pa.C.S. §7535. The issue is whether a spouse who is a surviving tenant on an entireties account should be reimbursed for monies which were advanced from the account by the spouse for the deceased spouse's medical, nursing, and related care expenses. The question is one of first impression. The following are the pertinent facts and procedural history.

Leroy Klopp, decedent, and his second wife, Lola M. Klopp, were married on February 18, 1984. Prior to his marriage decedent owned a checking account. Within one month following his marriage to Mrs. Klopp, decedent added her name to the account. Decedent was wealthier than Mrs. Klopp and con-

sequently his contribution to the account was greater than that of Mrs. Klopp, but there is no dispute that Mrs. Klopp also contributed her income to the joint account. This account was used to pay the couple's expenses, including taxes and household and medical costs.

In September 1986, decedent had a stroke which severely affected his physical condition. He eventually returned home on March 20, 1987; however, 10 days later he had a seizure and returned to the hospital. In May 1987, he again returned home until July 1988, at which time he went back to the hospital. He died in the hospital on January 16, 1989.

During the time decedent was living in his home, he required medical and nursing care. The couple paid for the services from money in the joint checking account and forwarded the bills to Blue Cross/ Blue Shield for reimbursement. The money which was reimbursed was returned to the account.

Blue Cross/Blue Shield paid for health services from May 1987 to August 1987, and August 1987 to November 1987. They refused, however, to pay any expenditures for the same exact health services rendered between December 1, 1987 and July 19, 1988. The amount which they refuse to reimburse is $40,563. Blue Cross/Blue Shield reimbursed $26,908 by checks made payable to the estate. This money is being held in escrow in an interest-bearing account. A total amount of $67,571 is claimed. The estate is attempting to negotiate the recovery of the money and is providing only custodial care for the money until the court determines who is the owner of the recovered funds. The estate takes no position in regard thereto. Mrs. Klopp, a co-executrix, claims the money. Barbara Trostler, decedent's daughter and co-executrix, refuses to release the money to

Mrs. Klopp because she claims that any recovered monies are assets of the estate; however, both parties agree to pay the fees of the attorney for the estate for any recovery.

According to the terms of the will, Mrs. Klopp receives $20,000, the marital residence, and personal property. The residue of the estate is in trust with the income for life to Barbara Trostler and the remainder to Ms. Trostler's daughter. Thus, if the checks are determined to be estate assets the entire amount will become part of the trust.

Barbara Trostler first argues that the advancement of monies from an entireties checking account by one owner to pay medical bills of the other joint owner severs the joint tenancy in those monies. Where property or an account is placed in the names of husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband. The placing of the property in both names, without more, creates an estate by the entireties. In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be *clear and convincing* evidence to the contrary. It is fundamental that once the estate by the entireties existed, neither tenant could partition (except after divorce), nor terminate or sever by his or her own conveyance as a joint tenant can do, nor by his or her own act affect the right to survivorship. *Holmes Estate,* 414 Pa. 403, 200 A.2d 745 (1964).

In the instant case decedent changed his checking account from his own name to the names of himself and Mrs. Klopp. By this act *alone* an estate by the entireties was created. Barbara Trostler has presented no evidence which demonstrates that a com-

pleted gift was not contemplated nor that an entireties property was not desired. There is a presumption that either holder of an entireties property may act for both without specific authorization, so long as the benefit of that action inures to both. *Estate of Matson,* 374 Pa. Super. 61, 542 A.2d 147 (1988). In her brief Ms. Trostler acknowledges that the payments Mrs. Klopp made for decedent's care inured to the benefit of decedent and Mrs. Klopp. Decedent benefited from the payments because he received the medical care and he was primarily liable for the bills; Mrs. Klopp benefited by the payments since she was secondarily liable for the payment of necessities for her spouse.

In order to show that an entireties asset is severed, a direct harm to one spouse through the actions of the other has to be proven. In the instant case, this never happened. If the court were to accept Ms. Trostler's argument that by the payments of decedent's bills at his direction and consent, Lola Klopp severed the account, the result would be ridiculous. It would mean that every time a spouse paid a bill for the other spouse from funds deposited in a joint account, the monies would cease to be entireties property. Properties owned by tenants by the entireties would exist only as long as the properties remain stagnant.

The cases which Ms. Trostler cites are not apposite to the case sub judice since none pertain to properties titled in the names of husband and wife, but to properties held jointly with the right of survivorship. An entireties property is a special creation of the law with unique characteristics. Ownership to entireties assets is not based on percentages of the contributions to each asset; rather, both spouses when acting in good faith own an indivisible whole until death or divorce.

For these reasons, the court finds that the joint checking account was an entireties account and the monies were not severed by Mrs. Klopp's payments of the health care expenses.

Barbara Trostler also contends that an insurance carrier making the reimbursement for payment of medical expenses has a duty to reimburse the estate of the insured as the successor in interest of the insurance under an agreement for medical insurance. The cases which Ms. Trostler cites are not apposite to the instant case. *McDivitt v. Pymatuning Mutual Fire Insurance Company,* 303 Pa. Super. 130, 449 A.2d 612 (1982), involved a husband and wife who had been separated for many years. The insured property was owned by the couple as tenants by the entireties but was occupied by only the wife. The wife took out an insurance policy in her own right, paid the premiums from her funds, and named herself as the insured. For these reasons the Superior Court found that the wife alone was entitled to the insurance proceeds.

*In re Gormen's Estate,* which Ms. Trostler quotes, is also not pertinent to the case at bar. In the *Gormen* case a life tenant bought insurance for a building and the court decided that the remaindermen were not entitled to any of the proceeds when the building was destroyed.

In the instant case, decedent and Mrs. Klopp were not separated at the time of decedent's death and mutual funds were used to pay for the services. Ms. Trostler would be unjustly enriched at the expense of Mrs. Klopp if she were to receive the money for the reimbursement of the expenses. Clearly, if Blue Cross/Blue Shield had repaid the monies before decedent's death, no issue would exist. The money would have been returned to the account which became solely Mrs. Klopp's at dece-

dent's death. The law should not allow a windfall to be bestowed upon Ms. Trostler simply because payments were not timely made.

For these reasons, the court finds that any reimbursements from Blue Cross/Blue Shield should be turned over to decedent's widow, Lola M. Klopp, for repayment of the funds advanced from the joint checking account. Accordingly, the court enters the following

### ORDER

And now, December 27, 1990, after hearing and review of the record, it is ordered and decreed as follows:

(1) Lola Klopp is entitled to $26,908 plus interest which represents the medical insurance refunds currently held in escrow as well as to any and all additional refund monies received either as a result of negotiations or litigation with the insurance carrier.

(2) Jack G. Mancuso, Esq., is entitled to deduct from the funds any fees which are due and owing for his efforts in obtaining said refunds.