J-S02014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF LEONARD J. FRITS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SARAH GARCIA, EXECUTRIX OF THE ESTATE OF LEONARD J. FRITS | : | |
| | : | |
| | : | |
| | : | No. 1033 MDA 2019 |

Appeal from the Order Entered May 30, 2019
In the Court of Common Pleas of Northumberland County Orphans' Court
at No(s):  OC-17-0101

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED APRIL 09, 2020**

Appellant, Sarah Garcia ("Executrix"), executrix of the estate of Leonard J. Frits ("Decedent"), appeals from the orphans' court's May 30, 2019 order granting in part and denying in part Appellee's, Cheryl A. Frits ("Wife"), petition for declaratory judgment.  We reverse and remand.

The orphans' court summarized the facts underlying this matter as follows:

> [Wife] and [Decedent] were married [on] December 3, 1979.  The marriage apparently had more than its share of problems as [Wife] filed a [p]rotection from [a]buse [petition] against [Decedent].  The [p]rotection from [a]buse [petition] was granted on November 13, 2014[,] and was set to expire on May 13, 2015. Among the provisions in the order was a requirement that "[n]either party shall sell, encumber, or dissipate any marital assets pending equitable distribution and divorce or further order of [c]ourt."
>
> Thereafter, on January 29, 2015, [Wife] filed a [d]ivorce [c]omplaint against [Decedent], including a claim for [e]quitable [d]istribution.  [Decedent] filed an [a]nswer and [c]ounterclaim in

[d]ivorce, also requesting [e]quitable [d]istribution of marital property.

The parties['] divorce proceeding was contentious with accusations of Decedent attempting to divert or dispose of items of marital property. This led to a [p]etition for [s]pecial [r]elief being filed on March 25, 2015. The result of that [p]etition was an order enjoining either party from disposing of any marital property without prior notice to the other party's counsel and the agreement of the other party. [Wife] then filed a [p]etition for [c]ontempt against Decedent.

An [o]rder appointing a [m]aster in divorce was entered by the [c]ourt on April 29, 2016[,] and Decedent filed his [i]nventory and [a]ppraisement and his [i]ncome and [e]xpense documentation on March 15, 2016.

Decedent … died September 22, 2016[,] before a final [d]ecree in [d]ivorce was entered or grounds for divorce were established. [Decedent] died testate naming his daughter … his [e]xecutrix. [Executrix] proceeded to probate the estate claiming the assets which are currently in dispute.[1]

Orphans' Court Opinion ("OCO"), 5/30/19, at 1-2 (unnumbered pages).

On April 18, 2018, Wife filed a petition for declaratory judgment, requesting, *inter alia*, that the orphans' court (1) determine that "[a]ll marital property/assets of [Wife] and … Decedent are excluded from the instant estate and are now the sole and separate property of [Wife];" and (2) "[delineate] specifically those assets which comprised the marital property/assets of [Wife] and … Decedent, and award[] said marital property/assets to [Wife]…." Petition for Declaratory Judgment, 4/18/18, at 5. Subsequently, on May 30, 2019, the orphans' court entered the following order:

---

[1] Decedent's will left his entire estate to Executrix.

AND NOW, this 30th day of May, 2019, Petition under 42 Pa.C.S. § 7532 for [declaratory] judgment is GRANTED in part and DENIED in part. [Wife] is entitled to:

1. All furniture and home décor purchased by the parties during the course of their marriage.

2. All joint bank accounts, any IRS tax debt (or refunds) from jointly filed tax returns, all monies from the sale of the marital residence that was deeded as tenants by the entireties, the Owl Hollow and Associates, LLC; Lucky Len, LLC; and Larry's Creek Fish and Game Club Membership as this was paid for by joint marital funds;[2] all quilts purchased by [D]ecedent during the course of the marriage, and all paintings purchased by [D]ecedent during the course of the marriage.

3. [Executrix] is entitled to the vehicles, the 2010 Chevrolet Equinox, the 2015 Hyundai Sonata and the Polaris ATV titled in [D]ecedent['s] name only, as well as all monies from [D]ecedent's individual bank accounts with Northumberland National Bank and Swineford National Bank, now known as Fulton Bank.

Order, 5/30/19 (single page).

_____

[2] Wife explains that:

Decedent became a general member of a hunting camp, Larry's Creek[,] where the oil and gas industry discovered a viable source of valuable fuels. … The members of Larry's Creek then created Owl Hollow [and Associates], LLC[,] on or about 2009, as an entity allowing said camp members to be paid, collectively, the oil and gas monies. … Decedent and [Wife] then created Lucky Len, LLC[,] also in 2009, in order to receive the individual monies due and owing from Owl Hollow [and Associates], LLC.

Wife's Brief at 1-2 (internal quotation marks omitted). It is undisputed that Decedent was the only member of Lucky Len, LLC. **See** N.T. Argument, 4/19/19, at 7-8, 30.

We rely on Wife's statement of the case because the orphans' court has not included these facts in its summary, and Executrix does not include a statement of the case in her brief in contravention of Pa.R.A.P. 2111 and 2117.

On June 19, 2019, Executrix simultaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Presently, Executrix raises the following issues for our review:

> 1. Did the [t]rial [c]ourt err in awarding the Owl Hollow and Associates, [LLC], Lucky Len, [LLC], and Larry's Creek Fish and Game Club [m]embership to [Wife] as title for these assets was clearly held in … Decedent's name only, and therefore, not entireties property transferable to the surviving spouse but rather estate property transferable through … Decedent's will?
>
> 2. Did the [t]rial [c]ourt err in awarding the Owl Hollow and Associates, [LLC], Lucky Len, [LLC], and Larry's Creek Fish and Game Club [m]embership to [Wife] pursuant to ***Clingerman v. Sadowski***, [485] A.2d 11 (Pa. Super. 1984)[,] and the theory stating entireties property can be severed with an implied mutual agreement?
>
> 3. Did the [t]rial [c]ourt err in not addressing additional debts of the estate?

Executrix's Brief at 1.

Before delving into Executrix's issues, we admonish her for her lack of compliance with our Rules of Appellate Procedure. Executrix's brief fails to include, *inter alia*, a statement of jurisdiction, the order in question, a statement of both the scope and the standard of review, a statement of the case, and the orphans' court opinion relating to its May 30, 2019 order. ***See*** Pa.R.A.P. 2111. Despite these clear violations, "because they do not impede our ability to review the issues at hand, we will consider [the appellant's] questions for review." ***Long v. Ostroff***, 854 A.2d 524, 527 (Pa. Super. 2004) (citations omitted).

- 4 -

In Executrix's first issue, she challenges the orphans' court's determination that "Owl Hollow and Associates, [LLC], Lucky Len, LLC, and [the] Larry's Creek Fish and Game Club membership were entireties property even though these assets were held in Decedent's individual name." Executrix's Brief at 4-5 (citation omitted). She argues that "spouses can hold property in fee simple without creating a tenancy by the entireties. Property held in fee simple would then pass through the decedent's estate, rather than directly to the surviving spouse, as property held as tenants by the entireties would." *Id.* at 5.

We acknowledge that, "[i]n reviewing findings of the [o]rphan[s'] [c]ourt, we must accept as true all evidence in the record supporting its findings and all reasonable inferences therefrom." *Estate of Matson*, 542 A.2d 147, 149 (Pa. Super. 1988) (citation omitted). "We will uphold its decision so long as it is supported by competent evidence and no abuse of discretion or error of law was committed." *Id.* (citation omitted).

Here, the orphans' court explained the reasoning for its decision as follows:

> Ultimately, the test before the [c]ourt is whether the property in dispute was held as tenants by the entireties or not. Of course, if the property is found to be held as tenants by the entireties, all property immediately becomes sole property of [Wife] upon the death of … [D]ecedent. If any or all of the property is not considered [to be] tenants by the entireties, then the property would pass through … [D]ecedent's estate.
>
> [Executrix] … would have the [c]ourt find that any property not directly titled jointly to be the separate property of … [D]ecedent. This would include the … 2010 Chevrolet Equinox, [the 2015

Hyundai Sonata, and a Polaris ATV,] titled in [D]ecedent's name only, monies from [D]ecedent's individual Northumberland National Bank Accounts, monies from individual Swineford National Bank Accounts, now known as Fulton Bank, the Owl Hollow and Associates, LLC, and Lucky Len, LLC, [the] Larry's Creek Fish and Game Club membership, guns, clothing, jewelry, quilts and paintings.

We begin with the proposition that "[i]t is well established that tenancy by the entireties is based on the common law concept that husband and wife were but one legal entity." **Biehl v. Martin**, … 84 A. 953, 954 ([Pa.] 1912). The underpinnings of the entireties presumptions come from the [c]ommon [l]aw[,] which teaches that marriage creates a unified holding of property. **Clingerman**…, 485 A.2d [at] 14….

The Superior Court has held that jointly held marital funds paid as consideration for the transfer of a lease and the purchase of a cabin on the leased premises created the presumption that the cabin was held as tenants by the entireties. **See** [**Matson, supra**.] "There can be no question that these funds constituted entireties property when they were obtained, when they were deposited into the joint account, and when they were withdrawn on the signature of either authorized depositor of that account. The character of these funds must be presumed to carry over and attach to that which is purchased with them." [**Id.** at] 71.

The [c]ourt does not have much information as to how the items of property in dispute were acquired. With respect to much of the property that is titled in Decedent's name alone, there was no information presented to the [c]ourt to show that those items were purchased with joint funds. The one item that was undisputedly purchased with funds from the parties' joint checking account is the membership in Owl Hollow [and] Associates, LLC. A cancelled check from the parties' joint checking account was entered into evidence. The notation on the check indicates "membership purchase Owl Hollow LLC[."] The Lucky Len, LLC[,] was created to receive funds from Owl Hollow [and] Associates, LLC[,] and thus any funds held by either entity are entireties property. As far as this [c]ourt is aware, [Decedent] was the sole member of the Lucky Len, LLC. Additionally, the Larry's Creek Fish and Game Club membership[] is so closely and clearly related to Owl Hollow [and] Associates, LLC, and Lucky Len, LLC, it follows logically that his membership interest is an entireties interest as well.

OCO at 3-4 (unnumbered pages).

Executrix asserts that the orphans' court incorrectly stated the holding of **Matson**, and therefore erred in its analysis. **See** Executrix's Brief at 6, 9.[3] After careful review, we agree.

In **Matson**, Mrs. Matson appealed from the dismissal of exceptions to an accounting rendered to the trial court with respect to the estate of her deceased husband, Mr. Matson. **Matson**, 542 A.2d at 149. The issue in that case was whether two items of personal property — the ownership of a building and the right to a lease for the campsite on which it stood, which was issued by the Bureau of Forestry of the Department of Environmental Resources (DER) — should be included in Mr. Matson's estate. **Id.** The trial court had determined that the items were not entirely included in his estate, as it found that Mr. Matson had completed an *inter vivos* gift of a two-thirds interest in the lease and the cabin to his brother and nephew. **Id.** at 149-50.

Mrs. Matson appealed the trial court's determination, arguing that "she was a joint owner of the building, that her husband failed to transfer an interest in the leasehold, either at common law or under the applicable DER regulations, and that the failed leasehold assignment prevented the completion of the gift intended by her husband." **Id.** at 150. At the outset of this Court's review, we observed that, "[a]s the petitioner, [Mrs. Matson] had

_____

[3] We note that both Executrix and Wife claim that **Matson** supports their respective positions. **See** Executrix's Brief at 2-3, 6-10; Wife's Brief at 17-18.

the burden of establishing her title to any items of which she claimed ownership." *Id.* at 149-50 (citation omitted). In considering her arguments, this Court noted that "[t]he lease, in essence a ground lease, and the improvement were purchased with $5,800.00 from a joint account ($1,400.00 for the lease; $4,400.00 for the cabin) in 1974 subsequent to the joint remortgaging of the Matsons' principal residence." *Id.* at 150 (commas added to monetary values). This Court also noted that, although Mr. Matson expressed an intent to transfer an interest in the lease and the cabin to his brother and nephew, the lease remained in Mr. Matson's name alone at the time of his death. *Id.*

In this Court's analysis, we discerned that "[w]e need not reach the claim of a gift … to the extent either of the assets in question is determined to have been held by the entireties." *Id.* at 151. With respect to the lease, we acknowledged that "Mrs. Matson did not argue below and does not argue here that she had a survivorship interest in the lease." *Id.* Nevertheless, we explained that:

> It is clear from the record that the funds paid as consideration for the transfer of the lease and the purchase of the cabin were paid from the Matsons' joint checking account. These funds represented the proceeds of a mortgage obligation assumed by both Mr. [and] Mrs. Matson which was secured by their jointly held primary residence. There can be no question that these funds constituted entireties property when they were obtained, when they were deposited into the joint account, and when they were withdrawn on the signature of either authorized depositor of that account. The character of these funds must be presumed to carry over and attach to that which is purchased with them. *Bramberry's Estate*, … 27 A. [405, ]408 [(Pa. 1893)] (voluntary conversion of joint estate in land into personalty manifests their

- 8 -

intent to resume their respective rights in the proceeds). Both spouses are presumed to have made a gift of their individual interests to the entireties, in whatever form that entireties interest takes.

***In the case at bar, the fact that the lease was held solely in the name of [Mr.] Matson may have been sufficient to rebut this presumption of entireties ownership.*** Pennsylvania law presumes that either holder of entireties property may act for both without specific authority so long as the benefit of such action inures to both. ***Bradney v. Sakelson***, … 473 A.2d 189 ([Pa. Super.] 1984). However, neither spouse may appropriate to his own use property held by the entireties unless his actions are made in good faith and for the mutual benefit of both parties to the tenancy. ***Nachman v. Nachman***, … 208 A.2d 247 ([Pa.] 1965) (appropriating entireties property to his own use was unlawful); ***Clingerman***[, ***supra***,] (withdrawals from entireties account for the benefit of only one spouse is misuse of power). Mrs. Matson testified that her husband's actions in placing the lease in his name alone were taken without her knowledge and consent and she might have argued that, in so doing, he impermissibly compromised her interest such that the entireties nature of the lease should be upheld. However, no such argument was advanced either below or on appeal. ***We, therefore, endorse the auditing court's finding that Mrs. Matson had no interest in the lease and that William Matson's interest in it was properly an asset of the estate.***

***Matson***, 542 A.2d at 151-52 (emphasis added). Having determined that Mrs. Matson had no interest in the lease, this Court then went on to consider whether Mr. Matson completed a valid *inter vivos* gift of a two-thirds interest in the lease to his brother and nephew. ***Id.*** at 152. It concluded that that gift was not completed, and thus, "the entire interest in the campsite lease became an asset of [Mr.] Matson's estate as of his death." ***Id.***

Turning next to the cabin, this Court stated:

With regard to the cabin, … the record is devoid of any evidence of title. There is no documentation pertaining exclusively to the transfer of or title in this building. ***In the absence of***

- 9 -

> ***designated title, it must be presumed that the Matsons held
> the cabin as tenants by the entirety.*** The underpinnings of
> the entireties presumption come from the common-law which
> teaches that marriage creates a unified holding of property.
> ***Clingerman***, … 485 A.2d at 14. It is the actual marital status of
> the parties and not necessarily the words stated or omitted in any
> instrument that determines their right to take as tenants by the
> entirety. ***Holmes Estate***, … 200 A.2d 745, 752 ([Pa.] 1964).
>
> The presumption of tenancy by the entireties in the cabin having
> been established, we must examine the record for evidence
> supporting its rebuttal. There must be clear and convincing
> evidence to rebut the presumption of entireties. ***Id.*** at … 747;
> ***Margarite v. Ewald***, … 381 A.2d 480 ([Pa. Super.] 1977).

***Matson***, 542 A.2d at 152-53.

The ***Matson*** Court then went on to address whether evidence of Mr.

Matson's brother's and nephew's ownership of the cabin rebutted the

presumption of entireties, and determined that it did not rebut the

presumption of the creation of a tenancy by the entireties in the cabin. ***Id.*** at

153. This Court further articulated:

> We note that, even if the presumption can be said to have been
> rebutted, because Mrs. Matson testified that she did know about
> and did not consent to her husband's actions in having the assets
> put into his name alone, we would find that his attempt to declare
> himself sole owner was unlawfully done in derogation of his wife's
> beneficial interest. ***See Nachman, supra; Bradney, supra;
> Clingerman, supra***. While both parties live as husband and wife,
> termination of an entireties estate occurs only by their joint acts
> and no single tenant can, by his own act, affect the other's right
> of survivorship. ***Clingerman***, … 485 A.2d at 14. In a similar
> situation where a husband caused entireties stock to be retitled to
> himself and his nephews without his wife's knowledge or consent,
> our [S]upreme [C]ourt held that the entireties presumption had
> not been rebutted by the nephews' claim of a completed gift.
> ***Holmes***, … 200 A.2d at 747. In ***Hengst v. Hengst***, … 420 A.2d
> 370 ([Pa.] 1980), a completed gift to the entireties was found in
> a husband's savings plan, even though it was titled in his name,

- 10 -

because of the wife's contribution to his ability to set aside that portion of his salary which went into the plan. *Id.* at … 370.

Mrs. Matson very clearly contributed to the acquisition of the property in question. She did not consent to her husband's attempt to give away a partial interest in the property and we are hard pressed to see that his doing so would in any way benefit his wife. By causing the lease to be issued in his name alone and, later, by attempting to give away a two-thirds interest in both the cabin and leasehold, [Mr.] Matson improperly appropriated to his own use property in which his wife had a clear beneficial interest. ***In the absence of a title to the personalty acquired with joint funds, the character of the funds must be presumed to carry over and attach to that which is purchased with them. Because the cabin was purchased with funds held by the entireties and because no document of title or bill of sale in the name of [Mr.] Matson was executed, the presumption arose that the cabin was held in tenancy by the entirety.*** The evidence on this record was not sufficient to rebut this presumption. We therefore disagree with the auditing court's holding and find that Mrs. Matson did establish ownership of the cabin by right of survivorship. ***By so holding we recognize that a purchase of untitled personalty made with proceeds from a loan obtained on the credit of both spouses, especially when jointly held marital property secures that obligation, creates a presumption of entireties ownership.***

*Matson*, 542 A.2d at 153 (emphasis added). Consequently, because the trial court had determined that Mr. and Mrs. Matson held the cabin as tenants by the entireties, it discerned that it did not need to reach the issue of whether Mr. Matson completed the *inter vivos* gift of the cabin to his brother and nephew. *Id.* Accordingly, the *Matson* Court reversed the trial court's order and remanded the case.

In this case, the orphans' court relied on *Matson* for the principle that "jointly held marital funds paid as consideration for the transfer of a lease and the purchase of a cabin on the leased premises created the presumption that

the *cabin* was held as tenants by the entireties." ***See*** OCO at 3-4 (citing ***Matson***; emphasis added). We note that the cabin in ***Matson*** was untitled, whereas in the case *sub judice*, it is undisputed between the parties that the interests in the Larry's Creek membership, Owl Hollow and Associates, LLC, and Lucky Len, LLC, were held in Decedent's name alone. Thus, because Decedent solely held title, the circumstances of this case are more akin to the titled lease in ***Matson*** than the untitled cabin.

With respect to the lease that was titled only in Mr. Matson's name, the ***Matson*** Court did not determine that, because Mr. Matson purchased it with joint funds, Mr. and Mrs. Matson held the lease as tenants by the entireties. ***See Matson***, 542 A.2d at 151-52. Instead, we began by conveying that "[t]he character of … funds must be presumed to carry over and attach to that which is purchased with them." ***Id.*** at 151 (citation omitted). Nonetheless, we noted that "the fact that the lease was held solely in the name of [Mr.] Matson may have been sufficient to rebut this presumption of entireties ownership." ***Id.*** at 152. We also pointed out that while "neither spouse may appropriate to his own use property held by the entireties unless his actions are made in good faith and for the mutual benefit of both parties to the tenancy[,]" ***see id.*** (citations omitted), Mrs. Matson made no argument that Mr. Matson had "impermissibly compromised her interest such that the entireties nature of the lease should be upheld[,]" though she did testify that "her husband's actions in placing the lease in his name alone were taken without her knowledge and consent[.]" ***Id.*** Thus, even though Mr. Matson

- 12 -

had used joint funds to purchase the lease, the **Matson** Court concluded that Mrs. Matson had no interest in the lease.

Similar to the circumstances in **Matson** regarding the lease, Decedent used funds from his joint checking account with Wife to purchase membership in Owl Hollow and Associates, LLC, thereby permitting an inference that they held the membership as tenants by the entireties. However, the membership was titled in Decedent's name only, which — based on the disposition of the titled lease in **Matson** — refutes that presumption. Further, the record does not indicate whether Wife knew and consented to Decedent's placing the membership in his name only, making it unclear whether he did so in bad faith and not for the mutual benefit of the parties.[4] Despite the lack of clear

_____

[4] Wife does not point us to any relevant record evidence on this question, nor does she advance an argument relating to it. **See** Wife's Brief at 11-18. Executrix, on the other hand, argues that:

> [Wife] presented no testimony as to her knowledge that Decedent was going to place his interest in Lucky Len, [LLC], and Owl Hollow and Associates, [LLC,] in his name only. [Wife], however, knew … Decedent was the member of … Larry's Creek Fish and Game [Club], [and] she obviously knew she was not a member[,] and this membership is … what led to the ownership interest in the gas and mineral rights held by Owl Hollow and Associates, [LLC,] and the royalties from said interest being paid to Lucky Len, [LLC]. As she was not a member of Larry's Creek Fish and Game Club, she had to have known when [Decedent] paid for his membership in Owl Hollow and Associates, [LLC,] it would be placed in his individual name[,] and having such knowledge and consenting to using the entireties funds to purchase said membership, gave her consent for … Decedent to own said assets in fee simple and not as tenants by the entireties. It can be further argued based on the above, [that Wife] agreed to sever the unity of title and

evidence, Wife suggests in her brief that she helped create Lucky Len, LLC, which we reiterate was solely titled in Decedent's name. **See** Wife's Brief at 2 ("Decedent and [Wife] then created Lucky Len, LLC, also in 2009, in order to receive the individual monies due and owing them from Owl Hollow [and Associates], LLC.") (internal quotation marks omitted); **see also** N.T. Argument, 4/19/19, at 30 (Wife's attorney acknowledging that Lucky Len, LLC, Owl Hollow and Associates, LLC, and the membership to Larry's Creek Fish and Game Club were "husband's business interests," and that Wife's "name wasn't on them"). This statement by Wife implies to us that she may have consented to Decedent's holding these interests in his name alone, and even helped him do so.

Ultimately, as the petitioner, Wife had the burden of establishing her title to any items of which she claimed ownership. **See Matson**, 542 A.2d at

_____

> terminate the tenancy by the entireties when [Decedent] purchased his membership in Owl Hollow and Associates, LLC. In **Clingerman**[, **supra**,] the Superior Court of Pennsylvania notes "the unity of title precludes termination of a tenancy by the entireties except … upon the death of one spouse, legal divorce or agreement between the spouses.["] **Id.** at 14. If she had knowledge that the entireties funds were being used to purchase an asset titled solely in [D]ecedent's name, then [Wife] agreed to terminate the tenancy by the entireties with respect to the funds used to purchase the membership in Owl Hollow and Associates, [LLC,] and agreed to Decedent's ownership of the membership interest in his individual name as a fee simple interest.

Executrix's Brief at 7-8 (internal citation omitted).

149-50. Based on the foregoing, we conclude that she has not met her burden. Though Wife demonstrated that Decedent used joint funds to purchase membership in Owl Hollow and Associates, LLC, thereby raising a presumption that that interest is entireties property, Executrix rebutted that presumption by showing that Decedent held that interest in his name alone. Wife failed to then prove that Decedent placed that interest in only his name unlawfully, *i.e.*, in bad faith and for his sole benefit. Accordingly, we reverse the orphans' court order to the extent it determined that Wife was entitled to Decedent's interests in Lucky Len, LLC, Owl Hollow and Associates, LLC, and the Larry's Creek Fish and Game Club.[5]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2020

---

[5] In light of our disposition, we need not address Executrix's remaining issues.