## Holmes Estate.

Argued March 24, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas L. Anderson,* with him *Paul P. Posa,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE EAGEN, May 27, 1964:

This is an appeal from a decree below dismissing exceptions to the final account and schedule of distribution of a decedent's estate.

The single question for determination involves the present ownership of 150 shares of corporate stock.

The facts are as follows:

W. W. Holmes died intestate on June 21, 1961, leaving to survive as heirs at law, his widow, Helen E. Holmes, a brother and a sister. He and his wife lived together in a friendly family relationship for many years right up to the time of his death. No children were born of the marriage.

During decedent's lifetime, he purchased with his own funds 150 shares of stock in the Chartiers Saving and Loan Association of Canonsburg, Pennsylvania. Certificates for 70 shares and 25 shares were issued on June 2, 1946, and March 8, 1948, respectively, in the names of "W. W. Holmes and/or Helen E. Holmes," and ownership was so carried on the records of the corporation. A certificate for 55 shares was issued on January 20, 1949, in the names of "W. W. Holmes and Helen E. Holmes." Admittedly, the names on the certificates were the decedent and his wife.

Possession of the certificates was never delivered to the wife. They were kept by the decedent in the marital home in a safe to which both had the combination and enjoyed access. However, the wife never actually saw or handled the certificates.

On May 6, 1960, without the knowledge or consent of his wife, the decedent surrendered the certificates to the corporation and caused new certificates to be issued in the names of himself and two nephews. These certificates remained in the possession of the decedent until his death and were kept in the safe in his home.

Following decedent's death, the administrator of his estate[1] listed the stock in the inventory and final account as an asset thereof. The widow and the nephews each filed exceptions and claimed ownership of the stock on the basis of separate alleged gifts inter vivos. The court below dismissed the exceptions and ruled that the estate was the owner of the stock. The widow, Helen E. Holmes, alone filed an appeal from this decree.

The lower court concluded that the evidence failed to establish the necessary delivery of the stock certificates to constitute a valid gift inter vivos. On the basis of *Martella Estate,* 390 Pa. 255, 135 A. 2d 372 (1957), it ruled that registration of the stock in the wife's name was insufficient, in itself, to constitute delivery. *Martella* is readily and basically distinguishable. Therein the claim of gift against the decedent's estate was asserted by a son. It involved the existence of an alleged joint estate and not an estate by the entireties. The principles of law that obtain, where the gift is between husband and wife and an estate by the entireties is involved, are vastly different.

If a gift inter vivos is claimed against a decedent's estate on the allegation of the creation of a joint estate during the decedent's lifetime, the claimant in order to prevail must prove, inter alia, an actual or constructive delivery of the subject property by clear, direct, precise and convincing evidence: *King Estate,* 387 Pa. 119, 126 A. 2d 463 (1956), and *Sivak Estate,* 409 Pa. 261, 185 A. 2d 778 (1962). When stock is purchased by a decedent during his lifetime and is registered in his name and a son or daughter, or nephew or niece, or brother or sister, as joint tenants, such registration, without more, does not constitute the delivery required to establish a valid gift inter vivos: *Gross-*

---

[1] The wife renounced her right to letters and the Mellon National Bank and Trust Company was appointed administrator.

*man Estate,* 386 Pa. 647, 126 A. 2d 468 (1956), and *Martella Estate,* supra. From the registration alone, a gift is not presumed. However, where stock is purchased by a husband and the certificates are made out in the names of both the husband and wife, even though the certificates are delivered to the husband and retained by him, the gift to the wife is complete. The gift is presumed by reason of the nature of the joint tenancy which is peculiar to the husband and wife relationship and delivery to the husband is considered to be delivery to both the husband and the wife. See, *East Rutherford Building and Loan Ass'n v. McKenzie,* 87 N.J. Eq. 375, 100 A. 931 (1917); *Eisenhardt v. Lowell,* 105 Colo. 417, 98 P. 2d 1001 (1940); and 41 C.J.S. Husband and Wife §151 (1944).

There is a sharp difference between joint estates and those held by a husband and wife: *Geist v. Robinson,* 332 Pa. 44, 1 A. 2d 153 (1938), and *Berkowitz's Estate (No. 1),* 344 Pa. 481, 26 A. 2d 296 (1942). Where property or an account is placed in the names of a husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband: *Cribbs Estate,* 411 Pa. 242, 191 A. 2d 379 (1963). The placing of the property in both names, without more, creates an estate by the entireties. *Brenner v. Sukenik,* 410 Pa. 324, 189 A. 2d 246 (1963). See also, *Madden v. Gosztonyi S. & T. Co.,* 331 Pa. 476, 200 A. 624 (1938). It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entirety: Ladner on Conveyancing in Pennsylvania, §1.16 (3d ed. 1961). In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear, and convincing evidence to the contrary. See,

*King v. Lemmer,* 315 Pa. 254, 173 A. 176 (1934); *Werle v. Werle,* 332 Pa. 49, 1 A. 2d 244 (1938); *Christy v. Christy,* 353 Pa. 476, 46 A. 2d 169 (1946); *Stewart v. Hooks,* 372 Pa. 542, 94 A. 2d 756 (1953). Even where a husband places the property in both names without his wife's knowledge or consent, a valid gift occurs: *Sparks v. Hurley,* 208 Pa. 166, 57 A. 364 (1904). Likewise, if a husband acquires property with his own funds, and places it in the names of himself and wife, this constitutes a gift and an estate by the entireties, even though he exclusively receives the income therefrom during his lifetime: *Loesch's Estate,* 322 Pa. 105, 185 A. 191 (1936).

The same principles apply whether real estate, personal property or stocks and securities are involved. See, *Sloan's Estate,* 254 Pa. 346, 98 A. 966 (1916); *Madden v. Gosztonyi S. & T. Co.,* supra.

In the instant case, since the evidence was insufficient to rebut the presumption of the existence of an estate by the entireties and completed gift, the widow as surviving tenant became the sole owner of the stock upon the husband's death. The court below, therefore, erred in decreeing that the decedent's estate was the owner thereof. It is fundamental that once the estate by the entireties existed, neither tenant could partition (except after divorce), nor terminate or sever by his or her own conveyance as a joint tenant can do, nor by his or her own act affect the other's right to survivorship: Ladner on Conveyancing in Pennsylvania, §1.17 (3d ed. 1961); 26 Am. Jur., Husband and Wife §81 (1940).

Decree reversed. Each party to pay own costs.