**PLASTIPAK PACKAGING, INC., Appellant**

v.

**Fred P. DePASQUALE, Appellee**

v.

**Borough of Swissvale, Equitable Resources, Inc., d/b/a Dominion Peoples, GAI Consultants, Inc., Mosites Construction Co., Port Authority of Allegheny County, SAI Consulting Engineers Inc., Wilkinsburg Penn Joint Water Authority.**

Superior Court of Pennsylvania.

Argued Aug. 22, 2007.

Filed Nov. 26, 2007.

Nicholas P. Vari, Pittsburgh, for appellant.

Michael R. Plummer, Pittsburgh, for DePasquale, appellee.

BEFORE: GANTMAN, TAMILIA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Plastipak Packaging, Inc., appeals from an order entered on December 5, 2006, in the Court of Common Pleas, Allegheny County, sustaining the preliminary objections to the writ of execution filed by Appellee Fred P. DePasquale and dissolving the garnishments by Appellant of settlement funds in possession of Mosites Construction Co., Maguire Group, Inc., SAI Consulting Engineers, Inc., Port Authority of Allegheny County, and Consolidated Natural Gas Company, d/b/a Dominion Peoples. Upon review, we affirm.

¶ 2 The factual and procedural history of this appeal is as follows. Appellant holds a $1 million dollar judgment against Appellee as a result of a judgment on a jury verdict that was entered in the United States District Court of the Western District of Pennsylvania. In a separate action (ALCOSAN lawsuit),[1] Appellee, his wife,

Norina DePasquale (Wife), and MCM, LLC (MCM), were plaintiffs in a property damage suit that was pending in the Court of Common Pleas, Allegheny County. In January 2006, Appellee, Wife, and MCM settled that lawsuit for an amount in excess of $1 million dollars. On May 17, 2006, Appellant filed a praecipe to re-issue a writ of execution to garnish the settlement proceeds that remained in the possession of the settling defendants, thereby restricting the transfer of these funds until the garnishment proceedings had been completed. On June 19, 2006, Appellee filed preliminary objections to Appellant's writ of execution stating that the settlement proceeds are held together with Wife as tenants by the entireties, and, therefore, these proceeds are not subject to execution on his personal debt. On June 21, 2006, the trial court ordered that Appellant reply to Appellee's preliminary objections and that the settlement proceeds remain in the custody of the settling defendants until further ordered by the trial court.

¶ 3 On November 30, 2006, after oral argument on the preliminary objections to Appellant's writ of execution, the trial court determined that Appellant did not overcome the presumption that the contractual right to be paid settlement funds in the possession of the garnishees is held by Appellee and Wife as tenants by the entireties. Accordingly, the trial court ordered the preliminary objections to the writ of execution sustained and the garnishments by Appellant dissolved. *See* November 30, 2006 Order.

¶ 4 On December 21, 2006, Appellant filed a timely appeal from the trial court's order dated November 30, 2006, and entered on December 5, 2006. The notice of

---

1. ALCOSAN is an acronym for the Allegheny County Sanitary Authority, one of the named

defendants in Appellee and Wife's original complaint.

appeal was immediately time stamped with the December 21, 2006 date pursuant to Pa.R.A.P. 905. *See State Farm Mut. Auto. Ins. Co. v. Schultz,* 281 Pa.Super. 212, 421 A.2d 1224, 1225 (1980) (stating that upon receipt of notice of appeal, clerk shall immediately stamp notice with date of receipt, and that date shall constitute date when appeal was taken). The notice of appeal was then returned to Appellant because of its incorrect caption. Appellant filed an amended notice of appeal on January 5, 2007. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement. However, the trial court issued a Pa.R.A.P. 1925(a) statement indicating that the reasons for its determination are set forth in its November 30, 2006 memorandum and order of court sustaining preliminary objections.

¶ 5 Appellant presents three questions for our review:

1. Whether the trial court erred by finding that the manner in which [Appellee and Wife] held the settlement proceeds along with a third party gave rise to a tenancy by the entireties interest in the settlement proceeds?

2. Whether the evidentiary presumption relating to property held by married individuals (i.e., the "entireties presumption") is properly applied when the married individuals hold the property along with a third party?

3. Even assuming that the trial court correctly applied the "entireties presumption," whether [Appellant] provided sufficient evidence to overcome the presumption?

Appellant's brief, at 4.

¶ 6 Appellant's first argument is that the trial court erred by finding that Appellee and Wife held the settlement proceeds as tenants by the entireties. Appellant's first contention is that an asset held together between spouses in their individual capacities does not constitute a tenancy by the entireties. Appellant's second contention is that a presumption that a husband and wife hold property as tenants by the entireties is not applicable when they share this possession with a third party. Specifically, Appellant argues that the trial court must examine the facts to determine the intent of the parties, with particular emphasis on the way that the property is titled. Further, Appellant notes that the burden to prove the intent to hold property as tenants by the entireties rests with Appellee and Wife.

¶ 7 Appellant argues that a trilogy of Supreme Court opinions, *Mauser v. Mauser,* 326 Pa. 257, 192 A. 137 (1937); *Kleinschmidt's Estate,* 362 Pa. 353, 67 A.2d 117 (1949), and *Heatter v. Lucas,* 367 Pa. 296, 80 A.2d 749 (1951), stand for the proposition that a tenancy by the entireties is not presumed when married individuals hold property with a third party, and the intention to create a tenancy by the entireties must be proven by some outward manifestation of intent. Appellant contends that several writings including the complaint in the ALCOSAN lawsuit, the existing settlement agreement, and the existing settlement checks evidence the intent of Appellee and Wife to define their interests in the property separately.

¶ 8 In *Heatter,* our Supreme Court was faced with an analogous situation of a conveyance to three people, two of whom were identified as husband and wife. A conveyance of either real or personal property to a husband and wife, without more, vests in them an estate by the entireties and upon the death of either, the survivor takes the whole. *Heatter,* at 298, 80 A.2d at 751. Contrary to Appellant's contention, there is no rule of construction or other restraint which interdicts the creation of a tenancy

in common (or joint tenancy) in which a unit held by the entireties constitutes one of the moieties or shares. *Id.*, at 298, 80 A.2d at 751 *(citing* 132 A.L.R. 630, 643–644). Further, it was never intended in either *Mauser*, at 259, 192 A. at 138, or *Kleinschmidt Estate*, at 356, 67 A.2d at 118, to rule otherwise. *Id.*, at 298, 80 A.2d at 751. The observation that, "An estate by the entireties, whether in personalty or realty, must be held in the names of husband and wife and no others" is only a rephrasing of the definition of an estate by the entireties. *Id.*, at 298–99, 80 A.2d at 751. That being said, we turn to a discussion of whether the language used by Appellee, Wife, and MCM, establishes a tenancy by the entireties between Appellee and Wife.

■ ¶ 9 The *Heatter* Court held that a conveyance to three parties, two of whom are husband and wife but neither designated as such, shall, in the absence of any language in the conveyance disclosing a contrary intention, be deemed a conveyance of one-third shares. *Id.*, at 300, 80 A.2d at 752. The presumption and even desirability of the qualitative holding arising out of the marital union is not so strong that it may be permitted to affect the quantitative holdings otherwise apparent on the face of the instrument. *Id.*, at 300, 80 A.2d at 752. *But intention is the cardinal and controlling element,* and if intention that the husband and wife shall take as such, *i.e.*, by entireties, sufficiently appears, it will be given effect. *Id.*, at 300, 80 A.2d at 752 (emphasis supplied).

¶ 10 The deed in *Heatter* read, "Francis Lucas, a single man, and Joseph Lucas and Matilda Lucas, his wife." *Id.*, at 297, 80 A.2d at 750. The *Heatter* Court determined that the deed "sufficiently discloses that the grantor intended to convey to Joseph and Matilda Lucas as tenants by the entireties." *Id.*, at 301, 80 A.2d at 752.

Additionally, the *Heatter* Court noted that in neither the *Mauser* nor the *Kleinschmidt* case was there any reference to the marital status of the parties. *Id.*, at 301, 80 A.2d at 752. In this deed, "[t]he words 'his wife' cannot be treated as mere surplusage: they occur in context in the classic form for the creation of a tenancy by entireties." *Id.*, at 301, 80 A.2d at 752. *Compare Teacher v. Kijurina,* 365 Pa. 480, 489, 76 A.2d 197, 202 (1950) (stating that use of words "his wife" did not create intention to form tenancy by entireties because parties were not actually married). "The parties must be taken to have considered and given significance to the marital status of two of the grantees." *Id.*, at 301, 80 A.2d at 752. Further, the use of a double "and" in the granting clause indicates intent that two units, one couple and one single person, take the property and that each acquires a half interest. *Margarite v. Ewald,* 252 Pa.Super. 244, 381 A.2d 480, 482 (1977) *(citing Heatter,* at 302, 80 A.2d at 752).

¶ 11 Similarly, in this case, the caption of the complaint reads, "[Appellee] and Norina DePasquale, his wife, individuals, and MCM, LLC, a limited liability company." *See* Complaint 8/22/02. Here, the words "his wife" cannot be treated as mere surplusage because they occur in the context in the classic form for the creation of a tenancy by entireties. *See Heatter,* at 301, 80 A.2d at 752. Further, the use of the double "and" in this caption indicates intent that two units, a couple and a single entity, acquire a half interest. *See Margarite,* 381 A.2d at 482 *(citing Heatter,* at 302, 80 A.2d at 752). Had the parties intended that each take an individual share, the use of the first "and" between Appellee and Wife would have been unnecessary. We find that the use of the word "individuals" in this context is simply to designate Appellee and Wife as individuals

in contrast to MCM that is designated as a limited liability company, and not for the purpose of creating individual interests in each party. By way of demonstrating further that Appellee and Wife intended to take as tenants by the entireties, although the caption includes the word "individuals," the first line of the complaint omits this descriptive word and reads as follows: "Plaintiffs, [Appellee] and Norina DePasquale, his wife (the "DePasquales") and MCM, LLC ("MCM")...." *See* Complaint 8/22/02. Additionally, the property that is the subject of this complaint was held by Appellee and Wife as tenants by the entireties as evidenced by the language, "[Appellee] and Norina DePasquale, his wife." *See* Deed, recorded on April 2, 1974. Because we find the evidentiary presumption that property held by a husband and wife is presumed to be held as a tenancy by the entireties applies to Appellee and Wife under these circumstances, Appellant's first argument fails.

¶ 12 Appellant's second argument is that even if the evidentiary presumption applies to Appellee and Wife, this presumption is overcome by the facts in the record. Appellant sets forth five separate contentions to support its argument that the evidentiary presumption has been overcome. The first contention is that the language in the settlement agreements is evidence that Appellee and Wife did not intend to hold the property as tenants by the entireties. Specifically, Appellant references one agreement in which Appellee referred to himself as an individual and one agreement in which Appellee referred to him and Wife but made no mention of their marital status.

¶ 13 With regard to the settlement agreement naming Appellee as an individual, we find this to be without merit based upon our above discussion determining that the phrase "his wife" was sufficient to establish a tenancy by the entireties. Further, with regard to the settlement agreement that fails to designate the marital status of Appellee and Wife, we note that the placing of the property in both names, without more, creates an estate by the entireties. *In re Estate of Holmes*, 414 Pa. 403, 406, 200 A.2d 745, 747 (1964) (citation omitted). It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entireties. *Id.*, at 406, 200 A.2d at 747. Therefore Appellant's first contention fails.

¶ 14 Appellant's second contention is that the fact that the settlement checks were written to Wife and not to Appellee is further proof that they did not hold the property as tenants by the entireties. We find this argument unavailing. Bank deposits and similar choses in action payable to husband and wife *or to husband or wife* are tenancies by the entireties with all the incidents relating thereto. *Sterling v. Smith*, 200 Pa.Super. 544, 189 A.2d 889, 890 (1963) (emphasis added). Either spouse presumptively has the power to act for both, so long as the marriage subsists, in matters of entireties without any specific authorization, provided the proceeds of such action inure to the benefit of both and the estate is not terminated. *Id.*, 189 A.2d at 890. Additionally, the deposition testimony reveals that a decision to require the signature of Wife on the settlement checks as opposed to the signature of Appellee, Wife, and the officers of MCM, was done as a matter of convenience for all parties involved. *See* N.T. Deposition of Dennis Watson, 8/15/06, at 40, 42–44. Accordingly, the fact that the bank deposit was made payable to Wife and not to Appellee is in no way inconsistent with an ownership of tenancy by the entireties. *Sterling*, 189

A.2d at 890. Therefore, Appellant's second contention fails.

■■ ¶ 15 Appellant's third contention is that because one garnishee described the settlement as a "lump sum" to be divided among Appellee, Wife, and MCM, this evidences an intent to hold the settlement proceeds separately. By way of further support of this argument, Appellant notes that the attorney in the ALCOSAN lawsuit testified that all the settlements were lump sums and that the parties never discussed allocation of the proceeds prior to Appellant's garnishment. However, Appellant cites no case law and develops no argument to bolster its contention. *See In re Trust Under Agreement of John H. Ware*, 814 A.2d 725, 738 (2002) *(citing Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1381 (1995) (holding that the argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities)); *see also* Pa.R.A.P. 2119. · Failure to develop an argument results in waiver of the claim. *See Commonwealth v. Herrick*, 442 Pa.Super. 412, 660 A.2d 51, 57 (1995) *(citing Commonwealth v. Melson*, 432 Pa.Super. 1, 637 A.2d 633, 645 n. 7 (1994)). Further, we fail to see how a lump sum payment evidences intent to hold the property separately. If anything, we find that a lump sum payment to the parties supports Appellee's claim that he and Wife held the property as tenants by the entireties. There would be no reason to allocate the shares of the proceeds between Appellee and Wife if the proceeds were being deposited in the same account. Accordingly, Appellant's third contention fails.

■ ¶ 16 Appellant's fourth contention is that Appellee and Wife · severed their entireties interest in the property before the ALCOSAN lawsuit settled, which is a strong suggestion that they intended to sever any tenancy by the entireties related to the property before the settlement interest materialized. Having its roots in the marital relationship, the unity of title precludes the termination of a tenancy by the entireties except in the rarest occurrences. *Clingerman v. Sadowski*, 335 Pa.Super. 514, 485 A.2d 11, 13 (1984). Termination occurs only upon the death of one spouse, legal divorce, or agreement between spouses. *Id.*, 485 A.2d at 13. While both parties live as husband and wife, termination of an entireties estate occurs, therefore, only by their joint acts. *Id.*, 485 A.2d at 13. Further, because property owned by tenants by the entireties is not subject to the debts of either spouse they may alienate it without infringing upon the rights of their individual creditors; all claims of the latter, even though reduced to judgment, are subject to extinction in the event of the alienation of the estate by the joint act of the owners. *Murphey v. C.I.T. Corp.*, 347 Pa. 591, 594, 33 A.2d 16, 18 (1943) (citation omitted).

¶ 17 Appellee and Wife engaged in the joint act of transferring the property to Wife. *See* October 23, 2003 Deed. Accordingly, at that time, the tenancy by the entireties was terminated. *Clingerman*, 485 A.2d at 13. However, this transfer to Wife is irrelevant to Appellant's argument in that Appellant is attempting to garnish the settlement proceeds from the ALCOSAN lawsuit and not the actual property itself. The fact that Appellee and Wife transferred the property in October 2003, before the settlements were agreed upon in December 2005, does not lend support to Appellant's argument that Appellee and Wife did not intend to hold the settlement proceeds acquired from the ALCOSAN lawsuit as tenants by the entireties. Accordingly, Appellant's fourth contention fails.

¶ 18 Appellant's fifth contention is that there is no clear evidence of any objective manifestation by Appellee and Wife to create a tenancy by the entireties in the settlement proceeds. Specifically, Appellant argues that prior to the point that it garnished the settlement proceeds, all settlement proceeds were channeled to Wife individually. As noted above, bank deposits and similar choses in action made payable *to husband or wife* are tenancies by the entireties with all the incidents relating thereto. *Sterling*, 189 A.2d at 890 (emphasis added). Despite the fact that the property was subsequently transferred to Wife, thereby terminating the tenancy by the entireties between Appellee and Wife in the property itself, the fact remains that the property was held by Appellee and Wife as tenants by the entireties at the time it was damaged and at the time that the initial complaint in the AL-COSAN lawsuit was filed. Further, as we explained at length above, the language contained in the settlement agreements evidences intent to hold the proceeds as tenants by the entireties. Therefore, the settlement proceeds distributed pursuant to the written agreements belong to both Appellee and Wife as tenants by the entireties, regardless of which spouse deposits the check. Therefore, Appellant's fifth contention fails. As all five of the contentions advanced by Appellant in support of its argument that the facts of record overcome the presumption of a tenancy by the entireties fail, Appellant's second argument fails.

¶ 19 Appellant's third argument is that it should be entitled to execute upon the settlement proceeds to the full extent of the judgment. Specifically, Appellant argues that Appellee testified that he, Wife, and MCM did not negotiate separate amounts for each party in the ALCOSAN lawsuit settlement, and, therefore, Appellant should be entitled to execute upon the entire settlement. We decline to address the merits of this argument because of our determination that the settlement proceeds are held by Appellee and Wife as tenants by the entireties, thereby precluding Appellant from executing upon *any* of the settlement proceeds. *See Murphey,* at 594, 33 A.2d at 18 (stating that property owned as tenancy by entireties is not subject to debts of either spouse). Therefore, Appellant's third argument fails.

¶ 20 As all of Appellant's arguments fail, we affirm the order entered on December 5, 2006, sustaining the preliminary objections to the writ of execution filed by Appellee and dissolving the garnishments by Appellant.

¶ 21 Order affirmed.