J. A19039/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF MICHAEL A. MASTROMATTEO, DECEASED | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GEORGE MASTROMATTEO, EXECUTOR | : : | No. 243 MDA 2018 |

Appeal from the Decree Entered January 15, 2018,
in the Court of Common Pleas of Lancaster County
Orphans' Court Division at No. 2016-1252

BEFORE:  GANTMAN, P.J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED: NOVEMBER 9, 2018**

George Mastromatteo, executor of the estate of Michael A. Mastromatteo, deceased ("Executor"), appeals from the January 15, 2018 decree entered in the Court of Common Pleas of Lancaster County that confirmed the final account of the estate and ordered distribution of the estate assets.  We affirm.

The orphans' court set forth the following:

> The Account of [Executor] was called for audit on September 5, 2017.
>
> Michael A. Mastromatteo [("Decedent")] died on May 17, 2016 having disposed of his estate by will, the pertinent provisions of which are as follows:
>
>> FIRST:  I give all of my estate, real and personal, in equal shares, to each of my three sons, MICHAEL MASTROMATTEO, II, [EXECUTOR] and JAMES MASTROMATTEO, and my wife, ROSA T. MASTROMATTEO, if they survive me. . . .

[Decedent] was survived by the following beneficiaries:

> Michael Mastromatteo, son
> [Executor], son
> James Mastromatteo, son
> Rosa T. Mastromatteo, wife

Objections to the account were filed by Rosa T. Mastromatteo [("Wife")] on September 1, 2017. The parties agreed that the objections could be addressed solely through briefs without a hearing.

Briefs were filed by the November 2, 2017 deadline by the respective parties. A reply brief was submitted by counsel for [Executor] on November 6, 2017. The matter is now ripe for disposition.

On May 22 ,2008, [Decedent] and [Wife] entered into a Prenuptial Agreement [("Prenuptial Agreement")] prior to their marriage. The pertinent provisions of the Prenuptial Agreement state:

> 3. RETENTION OF SEPARATE PROPERTY
>
> A. Each party shall, except as otherwise provided, during his or her remaining lifetime, retain the sole ownership of all of his or her respective Separate Property, and shall have the exclusive right to dispose of any and all such Separate Property during his or her remaining lifetime by inter vivos, or by any and all dispositions, and/or to encumber, pledge, or sell, transfer or hypothecate the same, without any interference by or the necessity of the joinder of the other, in such manner as shall be determined in the sole discretion of such owner thereof, as if the aforesaid marriage has not taken place.
>
> . . . .

D. The parties agree that at no time during their relationship shall there be any transmutation of any of their separate property interests into marital or jointly owned property except by an express written agreement. The purchase or acquisition of any asset in joint title, or the deposit of funds in a joint account, shall be held by [Decedent/Wife] as tenants in common and not as tenants by the entireties and not as joint tenants with right of survivorship, and such property shall be divided equally between the parties or their respective legal representatives, in the event of the death of either party or dissolution of the marriage. The following events, but not limited to only these events, shall under no circumstances be evidence of an intention by any party or of any agreement between the parties to transmute their separate property interest into marital or jointly owned property or into marital or joint income:. . . .

(d) any written statement by either party other than a written agreement expressly stating the change of separate property into marital or joint property . . . .

On June 14, 2008, [Decedent and Wife] were married. On October 8, 2009, [Decedent] executed a new last Will and Testament which provided equal shares of his estate to his children and [Wife] (see relevant provision recited above).

On February 7, 2014, [Decedent and Wife] executed a written Residence and Care Agreement with Pleasant View Retirement Community, a continuing

care retirement community. The pertinent provisions of the Residence and Care Agreement are as follows:

> THIS RESIDENCE AND CARE AGREEMENT (called "Agreement"), made this 7th day of February, 2014 between Pleasant View Retirement Community, a Pennsylvania non-profit corporation (called "Community," and referred to by the words "we," "us" and "our"), and [Decedent and Wife] (called "Resident"). . . .
>
> . . . .
>
> 7.4 Termination by Death. Following your death, this Agreement shall terminate when the Residence has been surrendered to us. Any applicable refund shall be paid in accordance with the refund provisions of this Agreement. If the Residence remains occupied by a Co-Resident, then this Agreement shall remain in full force and effect as to the surviving or remaining Co-Resident, and no refund shall be due at that time.
>
> . . . .
>
> 9.3 Double Occupancy-Limitation on Availability of Refund. It is the intention of the parties that any applicable refund will only be made in accordance with Section 9.5 after the last surviving Co-Resident vacates and surrenders the Residence, and this Agreement is terminated.
>
> . . . .
>
> 9.5 Condition and Due Date for Refund Payments. . . . all applicable refunds will be made after you have surrendered your Residence and only after it has been

> re-occupied by another resident from whom we have received full payment of the applicable Entrance Fee.

Orphans' court adjudication, 1/16/18 at 1-3 (ellipses in original).

The orphans' court determined that the residence and care agreement executed by Decedent and Wife and the Community ("Residence Agreement") transmuted the $263,700 entrance fee ("Entrance Fee") paid to the Community from Decedent's separate property to a marital asset which was, therefore, not subject to the provisions of the Prenuptial Agreement regarding retention of separate property and, consequently, not included as an estate asset subject to distribution under Decedent's will.

The record reflects that following entry of the January 15, 2018 decree, Executor filed a timely notice of appeal. The orphans' court then ordered Executor to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Executor timely complied. The orphans' court then filed its Rule 1925(a) opinion.

Executor raises the following issues for our review:

1. Did the [orphans'] court commit an error of law in finding the Entrance Fee to the Pleasant View Retirement Community was joint property, and not property held as tenants in common as required by the Decedent's Prenuptial Agreement?

2. Did the [orphans'] court error [sic] in finding the Residence and Care Agreement expressly changed the Decedent's separate property into marital or joint property when the Residence

and Care Agreement contained no such expressed statement?

3. Did the [orphans'] court error [sic] in finding Section 10 of the Prenuptial Agreement, the right to reside in residence, did not apply to the Decedent and [Wife's] residence at the time of Decedent's death?

Executor's brief at 5.

"Our standard of review of the findings of an orphans' court is deferential." *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002) (citation omitted). "When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Rosser*, 821 A.2d 615, 618 (Pa.Super. 2003) (citation omitted), *appeal denied*, 831 A.2d 600 (Pa. 2003).

In his first issue, Executor complains that the orphans' court erred in finding that the Entrance Fee paid to the Community was marital property because the terms of the Prenuptial Agreement require that the Entrance Fee was property held by Decedent and Wife as tenants in common. (Executor's brief at 11-12.) In his second issue, Executor complains that the orphans' court erred in finding that the Entrance Fee to the Community constituted marital property because the Residence Agreement created a property interest in the Entrance Fee, but did not modify the Prenuptial Agreement, and the terms of the Prenuptial Agreement require that the Entrance Fee was property held by Decedent and Wife as tenants in common. (*Id.* at 13-19.) In his

third issue, Executor complains that because a portion of the Entrance Fee is an estate asset because Decedent and Wife held the Entrance Fee as tenants in common, paragraph 10 of the Prenuptial Agreement requires that Wife vacate the Community residence so that the estate may obtain Decedent's one-half interest in the Entrance Fee refund. (*Id.* at 16-19.) Throughout his brief to this court, Executor argues that the terms of the Prenuptial Agreement require that the Entrance Fee was property held by Decedent and Wife as tenants in common. (*Id.* at 10-22.)

As noted by the orphans' court, and as reflected in the record, Executor failed to raise this issue in the orphans' court. (Trial court opinion, 3/14/18 at 2.) Stated differently, Executor never argued that the terms of the Prenuptial Agreement require that the Entrance Fee was property held by Decedent and Wife as tenants in common. The record reflects that Executor's argument in the orphans' court was that "Wife does not have a claim to [Decedent's] individual payment of the remaining balance of the $263,700.00 [E]ntrance [F]ee to [the] Community because the monies are separate funds from a separate account paid to a third party, and not jointly commingled with [Wife]." (Executor's brief in support of petition for adjudication/statement of proposed distribution pursuant to Pa.O.C. Rule 2.4, 10/27/17 at 6-7.) Although Executor concedes that he initially "argu[ed] for the return of ALL of the Entrance Fee" in his petition before the orphans' court, Executor claims that that "is not fatal to this appeal as the argument did not in any way

preclude the [orphans'] court from determining whether the refund of the Entrance Fee is an asset of the Estate consistent with applicable law." (Executor's brief at 21; emphasis in original.) Executor further claims that the issue of whether Decedent and Wife held the Entrance Fee property as tenants in common is properly before this court because the orphans' court "reviewed the written contracts in a **de novo** fashion." (**Id.**) Executor is mistaken.

It is well settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); **see also Moranko v. Downs Racing LP**, 118 A.3d 1111, 1115-1116 (Pa.Super. 2015) (**en banc**) (reiterating that arguments not raised initially before the trial court cannot be raised for the first time on appeal). Consequently, on appeal, Executor waives the issue of whether the terms of the Prenuptial Agreement require that the Entrance Fee was property held by Decedent and Wife as tenants in common for failure to raise it in the orphans' court.

In the orphans' court, Executor consistently argued that nothing in the Prenuptial Agreement and nothing in the Residence Agreement transmuted the Entrance Fee from Decedent's separate property into marital property. That is the sole issue that is properly before this court.

"As to interpretation, enforcement, and remedies, in Pennsylvania, antenuptial agreements are interpreted in accordance with traditional principles of contract law. Moreover, [t]he law of contracts requires

contractual terms that are clear and unambiguous to be given effect without reference to matters outside the contract." ***Estate of Kendall***, 982 A.2d 525, 534 (Pa.Super. 2009) (internal citations and quotes omitted). "[T]he interpretation of the terms of a contract is a question of law for which our standard of review is ***de novo***, and our scope of review is plenary." ***McMullen v. Kutz***, 985 A.2d 769, 773 (Pa.Super. 2009) (citation omitted).

> When interpreting a prenuptial agreement, the court, as in dealing with an ordinary contract, must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement.
>
> Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing.

***Raiken v. Mellon***, 582 A.2d 11, 13 (Pa.Super. 1990) (citations omitted).

Here, and as noted by the orphans' court, the Prenuptial Agreement permitted transmutation of separate property into marital property by express written agreement. (Trial court adjudication, 1/6/18 at 4; ***see also*** Prenuptial Agreement 5/22/08 at 5, ¶ D (providing that "[t]he parties agree that at no time during their relationship shall there be any transmutation of any of their separate property interests into marital or jointly owned property ***except by an express written agreement***" (emphasis added)). The Prenuptial Agreement also gave Decedent and Wife "the unqualified and exclusive right and authority" to manage and dispose of their separate property in any way they desired during their lifetimes. (Prenuptial Agreement, 5/22/08 at 6, ¶ 4.)

Therefore, the Prenuptial Agreement did not prohibit Decedent and Wife from acquiring a marital interest in property, but merely required an express writing to transmute separate property into marital property. The issue, of course, is whether the written Residence Agreement transmuted Decedent's separate property into marital property.

> Where property or an account is placed in the names of husband and wife, the creation of an estate by the entireties is presumed. *In re Holmes Estate*, 414 Pa. 403, 200 A.2d 745 (1964); *Margarite v. Ewald*, 252 Pa.Super. 244, 381 A.2d 480 (1977); *Brown v. Brown*, 352 Pa.Super. 267, 507 A.2d 1223, 1225 (1986). This presumption is not hindered by the fact that one spouse contributed the funds to purchase the property. *In re Holmes*, *supra*, 200 A.2d at 747; *Nachman v. Nachman*, 417 Pa. 389, 208 A.2d 247 (1965).

*Raiken*, 582 A.2d at 14.

Here, the record reflects that Decedent and Wife entered into the Residence Agreement with the Community as co-residents in a double occupancy. (Residence Agreement at 1, preamble.) As reflected in the Residence Agreement, Decedent and Wife agreed to pay the $263,700 Entrance Fee to the Community as consideration for their residence. (*Id.* at 4.2.) Decedent and Wife opted for a residence plan that required both to acknowledge that "[u]nder this plan, you or your estate generally will not be entitled to a refund of the Entrance Fee following termination" because after an occupancy period of 60 months, the Community earns the Entrance Fee. (*Id.* at 4.3(c), 4.5(c).) Additionally, as co-residents, Decedent and Wife were

"jointly and severally liable for each other's financial obligations and for all payments due" to the Community. (**Id.** at 4.9.) Moreover, in the event of the death of Decedent or Wife, the surviving co-resident remained "liable for all financial obligations incurred by either" of them. (**Id.**) The Residence Agreement further provides that it will terminate only upon surrender of the residence by both co-residents or upon the death of the last to die. (**Id.** at 7.4, 7.5.) In the event of a co-resident's death, any refund due is to be paid to the surviving co-resident, but only if the survivor surrenders the residence. (**Id.** at 9.2(c).) In the event that the surviving co-resident does not surrender the residence, upon the death of the surviving co-resident, any refund due is to be paid to the estate of the surviving co-resident. (**Id.**)

Our review of the record compels the conclusion that the determination of the orphans' court that the Entrance Fee is marital property is free of legal error because the terms of the Prenuptial Agreement clearly and unambiguously permitted transmutation of separate property to marital property with an express writing, and the written Residence Agreement transmuted Decedent's separate property to marital property because its terms created a marital interest in the Community residence and any refund of the Entrance Fee that may be due is due to Wife as the surviving co-resident under the terms of the Residence Agreement.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/9/2018</u>